IN RE the COMMITMENT OF Charles W. MARK:

STATE of Wisconsin,
Petitioner-Respondent,

v.

Charles W. MARK,
Respondent-Appellant-Petitioner.

Supreme Court

*No. 2003AP2068. Oral argument January 10, 2006.
—Decided June 29, 2006.*

2006 WI 78

(Also reported in 718 N.W.2d 90.)

1

4

ROGGENSACK, J., concurs.
BRADLEY, J., joins.
BUTLER, JR., J., concurs in part, dissents in part.

For the respondent-appellant-petitioner there were briefs and oral argument by *Glenn L. Cushing,* assistant state public defender.

For the petitioner-respondent the cause was argued by *Warren D. Weinstein,* assistant attorney general, with whom on the brief was *Peggy A. Lautenschlager,* attorney general.

¶ 1. N. PATRICK CROOKS, J. Charles W. Mark (Mark) seeks review of a court of appeals' opinion[1] affirming in part and reversing in part a circuit court decision to admit four statements Mark had made to his

---

[1] *State v. Mark,* 2005 WI App 62, 280 Wis. 2d 436, 701 N.W.2d 598.

parole officer at his Wis. Stat. ch. 980 (2003–04)[2] commitment hearing. Mark challenges the court of appeals' holding that only two of the four challenged statements should have been excluded pursuant to the Fifth and Fourteenth Amendments of the United States Constitution,[3] because he claims that all four statements were both compelled and incriminating, as well as being testimonial. *See State v. Zanelli* (*Zanelli II*), 223 Wis. 2d 545, 589 N.W.2d 687 (Ct. App. 1998). In addition, Mark challenges the court of appeals' determination that the circuit court properly excluded evidence concerning the conditions of his probation as not relevant to a determination of whether Mark is a sexually violent person pursuant to Wis. Stat. § 980.01(7).

¶ 2. We affirm the decision of the court of appeals and remand this case for further proceedings. In doing so, we conclude that Wis. Stat. § 980.05(1m) grants a ch. 980 respondent the same rights at his or her ch. 980 commitment trial as a defendant is entitled to in a criminal case. We hold that in order for a statement to be properly excluded under the Fifth Amendment privilege against self-incrimination, as applied to the states through the Fourteenth Amendment's due process

---

[2] All subsequent references to the Wisconsin Statutes are to the 2003–04 version unless otherwise indicated.

[3] The Fifth Amendment to the United States Constitution provides, in pertinent part, "No person . . . shall be compelled in any criminal case to be a witness against himself. . . ." U.S. Const. amend. V.

The Fourteenth Amendment to the United States Constitution provides, in relevant part, "No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law. . . ." U.S. Const. amend. XIV, § 1.

clause, it must be testimonial, compelled, and incriminating. We further determine that while an individual has a prepetition or prearrest right against self-incrimination, that right is ordinarily not self-executing and must be invoked. Therefore, we withdraw any language to the contrary in *State v. Zanelli* (*Zanelli I*), 212 Wis. 2d 358, 569 N.W.2d 301 (Ct. App. 1997). Finally, we conclude that the conditions of Mark's probation are irrelevant to the determination of whether or not he is a sexually violent person pursuant to Wis. Stat. § 980.01(7) and were therefore properly excluded by the circuit court.

I

¶ 3. The relevant facts are not in dispute. Mark was convicted in 1994 of three counts of sexually assaulting a child, and sentenced to eight years of confinement, followed by two 15–year terms of probation, to be served consecutively to the confinement, but concurrently to one another. Mark was released on parole in May 1999 but his parole was revoked in June 2000 and he was sent back to prison to serve the rest of his confinement. On June 28, 2002, just before his scheduled release, the State of Wisconsin (State) filed a petition alleging that Mark was a sexually violent person under Wis. Stat. § 980.01(7).

¶ 4. At trial, the State offered into evidence four statements made by Mark to his parole officer. The first two were handwritten, signed admissions by Mark that he had violated the terms of his parole. Each was written on a form, at the top of which provided:

> PROBATIONER/PAROLEE/OFFENDER I have been advised that I must account in a truthful and accurate manner for my whereabouts and activities, and that

8

failure to do so is a violation for which I could be revoked. I have also been advised that none of this information can be used against me in criminal proceedings.

¶ 5. In his first statement, dated September 8, 1999, Mark described his contact with a woman he met at church. According to the report, Mark talked with this woman on her porch, and watched her fold her underclothes and breastfeed her baby. In the statement, Mark also admitted to telephoning the woman twice. This conduct violated the rules of Mark's supervision, which prohibited him from having a relationship with a woman without permission.

¶ 6. In Mark's second written report, dated April 28, 2000, Mark described an incident involving a woman living next door to him in his hotel. The report began "I screwed up big," and described entering his neighbor's room without permission, and upon finding her in the bathroom, trying to forcibly gain entrance to that room for about five or ten minutes, while she yelled "get out of here" about three times. Mark's statement claimed that he only wanted to see his neighbor naked, and that he reported the incident because the woman threatened to call the police. Mark verbally reported the incident to his parole officer on April 25, 2000, after which an apprehension request was issued. Mark voluntarily turned himself into police that same day. Although his parole had not yet been revoked formally, Mark was in police custody at the time he made his written statement regarding the hotel incident. Mark's parole was subsequently revoked as a result of this incident.

¶ 7. In addition to his two written statements, two oral statements Mark made to his parole officer were also entered into evidence at his ch. 980 commit-

ment trial. In the first, made approximately two weeks after his written description of the hotel incident with his neighbor in her bathroom, Mark admitted that his real motivation had been to have sex with his neighbor. In the second, in a Violation Investigation Report dated February 18, 2000, Mark's parole officer noted that Mark had orally admitted to prior sexual activity with his stepson—conduct for which Mark had already been charged and convicted in 1994.

¶ 8. At Mark's ch. 980 hearing, the circuit court allowed into evidence the four statements Mark made to his parole officer.

¶ 9. At the time of his commitment hearing, Mark had begun to serve his concurrent 15–year terms of probation. At trial, Mark sought to introduce evidence regarding the conditions of his probation, including the rules of supervision to which he would be subjected. The circuit court denied Mark's request and, instead, granted the State's motion in limine asking the court to prohibit "any evidence, direct or indirect, concerning any probation or parole supervision, conditions of confinement, or other restrictions, which could be imposed on the respondent in the future, on the grounds that such evidence is irrelevant and inadmissible under Wis. Stat. § 904.02." At trial, Mark was allowed to establish that he was on probation and would be for 15 years, but was not permitted to produce evidence as to the conditions of his probation supervision. A jury found Mark to be a sexually violent person under Wis. Stat. § 980.01(7).

¶ 10. On appeal, Mark challenged the admission of the four statements, and the exclusion of the conditions of his probation supervision. The court of appeals determined that the statements concerning the woman on her porch and the sexual activity with his stepson were properly admitted into evidence at Mark's ch. 980

10

commitment trial, as they were not incriminating under the definition employed in *Zanelli II,* and therefore did not properly fall within the Fifth Amendment privilege. The court of appeals further concluded that the written and oral statements regarding the incident in the hotel room were incriminating under the *Zanelli II* definition, and remanded the case to the circuit court for a determination of whether the statements were also compelled, and should therefore be properly excluded under the Fifth Amendment, and also for a harmless error analysis if there was compulsion. The court of appeals also held that the circuit court properly excluded evidence of the conditions of Mark's probation as not relevant to the determination of whether or not Mark was a sexually violent person under Wis. Stat. § 980.01(7). Mark petitioned this court for review.

II

¶ 11. The State argued at the court of appeals that Mark waived the right to raise the issue of the admissibility of his statements, since he did not object at the circuit court to the admission of such statements. *See State v. Mark,* 2005 WI App 62, ¶ 13, 280 Wis. 2d 436, 701 N.W.2d 598. Although we generally decline to address issues raised for the first time on appeal, we have the authority to do so. *See State v. Moran,* 2005 WI 115, ¶ 31, 284 Wis. 2d 24, 700 N.W.2d 884. Because both the State and the defendant have asked us to clarify the issues raised on appeal, we will address them here.

A

¶ 12. Whether Mark's statements to his parole officer should have been excluded from his ch. 980

commitment trial, pursuant to Mark's Fifth Amendment and Fourteenth Amendment rights against self-incrimination, involves the meaning of Wis. Stat. § 980.05(1m). Statutory interpretation is a question of law which this court reviews de novo, although benefiting from the analysis of the circuit court and the court of appeals. *State v. Lombard* (*Lombard I*), 2004 WI 95, ¶ 17, 273 Wis. 2d 538, 684 N.W.2d 103. We also review, de novo, the application of constitutional principles to established facts. *See State v. Turner*, 136 Wis. 2d 333, 344, 401 N.W.2d 827 (1987).

¶ 13. Mark reasons that Wis. Stat. § 980.05(1m) grants individuals who are the subject of a ch. 980 petition the same rights as those available to a defendant in a criminal case. Therefore, it is Mark's position that, just as criminal defendants are protected by the Fifth Amendment privilege against compelled self-incrimination, the statements Mark made to his parole officer are prohibited from being introduced at his ch. 980 trial. Mark urges this court to adopt a rule that a compelled statement may never be used against a defendant at a ch. 980 commitment trial.[4]

---

[4] Part of Mark's argument on appeal is that both psychologists who testified for the State of Wisconsin (State) relied on the statements at issue in this case in making their determination of Mark's potential for future sexual violence. However, as the United States Supreme Court stated in *United States v. Verdugo-Urquidez*, "[t]he privilege against self-incrimination guaranteed by the Fifth Amendment is a fundamental *trial right* of criminal defendants. Although conduct by law enforcement officials prior to trial may ultimately impair that right, a constitutional violation occurs *only at trial*." *United States v. Verdugo-Urquidez*, 494 U.S. 259, 264 (1990)(emphasis added)(citations omitted). Therefore, the State argues that the psychologists could use his statements in their assessments of Mark's likelihood to reoffend as the assessments were made

¶ 14. It is the State's position that the court of appeals correctly relied on *Zanelli II* in holding that Mark's statements must be both compelled and incriminating in order to gain the protections of the Fifth Amendment. While the State acknowledges that Wis. Stat. § 980.05(1m) grants Mark the same rights at trial as a defendant in a criminal case, the State maintains that the Fifth Amendment only protects statements that are both compelled and incriminating.

¶ 15. Wisconsin Stat. § 980.05(1m) provides: "[a]t the trial to determine whether the person who is the subject of a petition under s. 980.02 is a sexually violent person, all rules of evidence in criminal actions apply. All constitutional rights available to a defendant in a criminal proceeding are available to the person." Wis. Stat. § 980.05(1m).[5]

---

before his ch. 980 commitment hearing, and not "at trial." We do not find it necessary to address that issue here, since we are satisfied that under the circumstances presented in this case, the correct framework for analysis is one that determines whether the statements were testimonial, compelled, and incriminating.

[5] Justice Butler's concurrence/dissent all but ignores these statutory provisions. Justice Butler's concurrence/dissent, ¶¶ 51–2. There is no discussion of the fact that under our statute "[a]t the trial . . . all rules of evidence in criminal actions apply," and that the "constitutional rights available to a defendant in a criminal proceeding are available to the person" who is the subject of a ch. 980 petition. Wis. Stat. § 980.05(1m). His opinion relies heavily on decisions of the United States Supreme Court (*Allen v. Illinois,* 478 U.S. 364 (1986)) and the Illinois Supreme Court (*People v. Allen,* 481 N.E.2d 699 (Ill. 1985)) which reviewed and applied an Illinois statute that did not include any provisions similar to the above cited language from § 980.05(1m). It is also noteworthy that the Illinois statute did not include the right to remain silent among the rights accorded

¶ 16. Among the rights granted a defendant in a criminal proceeding is the Fifth Amendment privilege against self-incrimination. The Fifth Amendment to the United States Constitution provides, in pertinent part, "[n]o person . . . shall be compelled in any criminal case to be a witness against himself. . . ." U.S. Const. amend. V.[6] As the United States Supreme Court noted in *Minnesota v. Murphy:*

> It has long been held that this prohibition not only permits a person to refuse to testify against himself at a criminal trial in which he is a defendant, but also "privileges him not to answer official questions put to him in any other proceeding, civil or criminal, formal or informal, where the answers might incriminate him in future criminal proceedings."

*Minnesota v. Murphy,* 465 U.S. 420, 426 (1984) (citing *Lefkowitz v. Turley,* 414 U.S. 70, 77 (1973)). It is also well-established in Fifth Amendment jurisprudence that "[t]he Fifth Amendment prohibits only compelled testimony that is incriminating." *Hiibel v. Sixth Judicial Dist. Court of Nevada,* 542 U.S. 177, 189 (2004)(citing *Brown v. Walker,* 161 U.S. 591, 598 (1896)). In other words, when a defendant seeks to exclude prior statements based upon his or her Fifth Amendment privilege, he or she must first establish that the statements at issue are 1) testimonial; 2) compelled; and 3) incriminating. *See id.* Therefore, we reject Mark's argument

a person alleged to fall within the provisions of the Sexually Dangerous Persons Act. Justice Butler's concurrence/dissent, ¶ 59 (citing *Allen,* 478 U.S. at 371).

[6] In his brief, Mark notes that Article I, Section 8 of the Wisconsin Constitution contains the same prohibition.

14

that the mere fact that a statement is compelled requires it be excluded from a ch. 980 commitment trial.[7]

¶ 17. It is Mark's further contention that the statements at issue regarding the hotel bathroom incident are, on their face, compelled as he was in custody at the time they were made, and he was required to report truthfully to his parole officer, or face possible revocation. Therefore, Mark believes that remand to the circuit court for determination of whether there was compulsion is unnecessary.

¶ 18. Although the United States Supreme Court has recognized police custody as "[a] well-known exception to the general rule" that an individual must assert his Fifth Amendment "privilege rather than answer if he desires not to incriminate himself," a defendant's custody status alone is not sufficient to determine whether the statements were, in fact, compelled. *Murphy,* 465 U.S. at 429.

¶ 19. We next consider the scope of the Fifth Amendment privilege in the context of Wis. Stat. ch. 980. There are three Wisconsin cases that have ad-

---

[7] Mark relies on several authorities (*Minnesota v. Murphy,* 465 U.S. 420 (1984); *State ex rel. Tate v. Schwarz,* 2002 WI 127, 257 Wis. 2d 40, 654 N.W.2d 438; *State v. Thompson,* 142 Wis. 2d 821, 419 N.W.2d 564 (Ct. App. 1987); *State v. Evans,* 77 Wis. 2d 225, 252 N.W.2d 664 (1977)) to argue that a compelled statement by a probationer may not be used for any evidentiary purpose in a criminal prosecution, and therefore, in a ch. 980 trial. Yet Mark misstates the holdings in those cases by suggesting that compulsion alone is sufficient to exclude a statement from a criminal prosecution. A statement must be testimonial, incriminating, and compelled to be excluded from a criminal prosecution by virtue of the Fifth Amendment.

dressed the applicability of various aspects of the Fifth Amendment privilege in regard to a ch. 980 trial reviewing Wis. Stat. § 980.05(1m). We will examine each in turn.

¶ 20. In *Zanelli I*, the court of appeals considered the right of the petitioner to exclude the testimony of a state psychologist to the effect that Zanelli had refused to participate in the psychologist's prepetition evaluation of him. *Zanelli I*, 212 Wis. 2d at 369. Noting that " '[t]he Fifth Amendment protects a person from compelled self-incrimination at all times, not just upon arrest or during a custodial interrogation,' " the court of appeals concluded that Zanelli's right to remain silent would be violated if the prosecution were allowed to comment on his prearrest silence unless he chose to testify. *Id.* at 371–72 (citing *State v. Fencl,* 109 Wis. 2d 224, 236, 325 N.W.2d 703 (1982)).

¶ 21. In *Zanelli II,* petitioner challenged the admissibility of statements he had made to his probation officers and to a police officer. *Zanelli II,* 223 Wis. 2d at 567. Zanelli argued that "his statements to probation officers were compelled by the threat of loss of liberty associated with both the presentence investigative process and probation supervision." Because the court of appeals concluded that the statements at issue were not incriminating, in the sense that they could not be used to "incriminate him in a pending or subsequent criminal prosecution," it deemed them not protected by the Fifth Amendment, and therefore properly admitted by the circuit court. *Id.* at 550, 568.

¶ 22. In *Lombard I,* this court considered "whether a person such as Lombard is entitled to receive *Miranda* warnings prior to being interviewed by a State evaluator in regard to whether a ch. 980 petition should be filed." *Lombard I,* 273 Wis. 2d 538, ¶ 16.

16

Petitioner contended that he was entitled to "*Miranda v. Arizona,* 384 U.S. 436 (1966) warnings prior to his pre-petition evaluation with the State's psychologist in regard to whether a ch. 980 petition should be filed." *Id.,* ¶ 2. Noting that Wis. Stat. § 980.05(1m) plainly contains the language "at the trial," the *Lombard I* court held that "such constitutional rights would apply at Lombard's ch. 980 trial," but not in his prepetition evaluation. *Id.*

¶ 23. In its analysis, the *Lombard I* court cited both *Zanelli I* and *Zanelli II* with approval. *Lombard I* noted that *Zanelli I* was correct in its conclusion that "a person subject to a pre-petition evaluation has the right to remain silent pursuant to Wis. Stat. § 980.05(1m)," but cautioned that "Lombard's claim that *Zanelli I* supports his position that *Miranda* warnings are required prior to a pre-petition interview is too great a stretch." *Lombard I,* 273 Wis. 2d 538, ¶ 40.

¶ 24. Examining *Zanelli I* in light of the United States Supreme Court's decision in *Murphy,* we now conclude that the language in *Zanelli I* sweeps too broadly in declaring that " '[t]he Fifth Amendment protects a person from compelled self-incrimination at all times. . . .' " *Zanelli I,* 212 Wis. 2d at 371 (citing *Fencl,* 109 Wis. 2d at 236). While we agree with the *Zanelli I* court that the Fifth Amendment guarantee against self-incrimination extends to prearrest silence and that Wis. Stat. § 980.05(1m) gives ch. 980 respondents the same constitutional rights as criminal defendants at trial, *Murphy* reaffirms the general rule that the Fifth Amendment privilege must be asserted in all but "certain well-defined situations." *Murphy,* 465 U.S. at 429.

¶ 25. In *Murphy,* the United States Supreme Court considered whether the Fifth and Fourteenth

Amendments to the United States Constitution prohibit the introduction into evidence of incriminating admissions Murphy made during a meeting with his probation officer. *Id.* at 422. The Court began its analysis by stating that:

> a witness protected by the privilege [against self-incrimination] may rightfully refuse to answer unless and until he is protected at least against the use of his compelled answers and evidence derived therefrom in any subsequent criminal case in which he is a defendant. . . . Absent such protection, if he is nevertheless compelled to answer, his answers are inadmissible against him in a later criminal prosecution.

*Id.* at 426 (citing *Lefkowitz*, 414 U.S. at 78). The Court went on to note that:

> the general obligation to appear and answer questions truthfully did not itself convert [] otherwise voluntary statements into compelled ones. In that respect, Murphy was in no better position than the ordinary witness at a trial or before a grand jury who is subpoenaed, sworn to tell the truth, and obligated to answer on the pain of contempt, unless he invokes the privilege and shows that he faces a realistic threat of self-incrimination. The answers of such a witness to questions put to him are not compelled within the meaning of the Fifth Amendment unless the witness is required to answer over his valid claim of the privilege.

*Id.* at 427. Therefore, the mere fact that an individual is required to appear and report truthfully to his or her probation (or parole) officer is insufficient to establish compulsion.

¶ 26. After examining the case law on what constitutes compulsion for purposes of the Fifth Amendment, the United States Supreme Court concluded that "[t]he answers of such a witness to questions put to him

18

are not compelled within the meaning of the Fifth Amendment *unless the witness is required to answer over his valid claim of the privilege."* *Id.* (emphasis added). Therefore, the Court reasoned, cases addressing this issue, "taken together, 'stand for the proposition that, in the ordinary case, if a witness under compulsion to testify makes disclosures instead of claiming the privilege, the government has not "compelled" him to incriminate himself.'" *Id.* (citing *Garner v. United States,* 424 U.S. 648, 654 (1976)). Thus, "a witness confronted with questions that the government should reasonably expect to elicit incriminating evidence ordinarily must assert the privilege rather than answer if he desires not to incriminate himself." *Id.* at 429. If, however, the witness chooses to answer, "his choice is considered to be voluntary since he was free to claim the privilege . . ." with only a few well-established exceptions to the general rule. *Id.*

¶ 27. Therefore, in a prepetition or prearrest situation, in order for an individual to effectively invoke his or her Fifth Amendment rights against self-incrimination, he or she must ordinarily assert the privilege.[8] We hereby withdraw any language in *Zanelli I* that conflicts with the United States Supreme Court's decision in *Murphy.*

---

[8] The Court in *Murphy* explained the penalty exception to the general rule as follows:

> The general rule that the privilege must be claimed when self-incrimination is threatened has . . . been deemed inapplicable in cases where the assertion of the privilege is penalized so as to "foreclos[e] a free choice to remain silent, and . . . compe[l] . . . incriminating testimony." *Garner v. United States,* 424 U.S., at 661. . . .

. . . .

## B

¶ 28. In order to evaluate the applicability of the Fifth Amendment to the individual statements Mark seeks to exclude, we must first determine whether each of the statements is incriminating. Since a statement made by a probationer or parolee to his or her probation/parole officer may be admissible in a subsequent criminal proceeding, it is appropriate to apply the Fifth Amendment analysis to the statements at issue here. *See Murphy,* 456 U.S. at 440.[9] We again note that the ch. 980 commitment hearing for Mark, while a civil proceeding, involved the same rights as those available to a defendant in a criminal case. *See* Wis. Stat. § 980.05(1m). If a statement is not incriminating, we need not reach the issue of whether the statement was compelled, as statements must be both incriminating and compelled in order to fall within the Fifth Amendment privilege.[10] *See Hiibel,* 542 U.S. at 189.

¶ 29. In *Zanelli II,* the court of appeals defined "incriminating" as such "statements [that] could in-

There is thus a substantial basis in our cases for concluding that if the state, either expressly or by implication, asserts that invocation of the privilege would lead to revocation of probation, it would have created the classic penalty situation, the failure to assert the privilege would be excused, and the probationer's answers would be deemed compelled and inadmissible in a criminal prosecution.

*Murphy,* 465 U.S. at 434–35 (footnote omitted).

[9] "Because he had not been compelled to incriminate himself, Murphy could not successfully invoke the privilege to prevent the information he volunteered to his probation officer from being used against him in a criminal prosecution." *Id.* at 440.

[10] As both the defendant and the State concede that all of the statements at issue are testimonial, we need not establish that element of the test.

20

criminate [one] in a pending or subsequent criminal prosecution. . . ." *Zanelli II,* 223 Wis. 2d at 568. Mark argues that the court of appeals' reliance on the definition of incriminating in *Zanelli II* is inappropriate in light of a footnote in the United States Supreme Court decision in *Rhode Island v. Innis,* 446 U.S. 291 (1980), which suggests a different definition, although in regard to the term "incriminating response."

¶ 30. In *Innis,* the United States Supreme Court considered the meaning of "interrogation" under *Miranda v. Arizona.*[11] *Innis,* 446 U.S. at 297. In a footnote, the Court articulated what it believed constituted an incriminating response by stating: "[b]y 'incriminating response' we refer to any response— whether inculpatory or exculpatory—that the *prosecution* may seek to introduce at trial." *Id.* at 302 n.5 (emphasis in original). The flaw in Mark's argument is that the *Innis* definition of "incriminating response" necessarily contemplates the use of statements by the prosecution in a criminal trial. In such circumstances, it is reasonable to infer that any statement of the defendant that the prosecution might seek to admit would have the tendency to incriminate or inculpate the defendant. The same cannot be said in a ch. 980 civil commitment trial, where the object of the proceeding is to determine the likelihood the defendant will commit a future act of sexual violence, not to convict him of a crime. Outside of the criminal context, the rationale behind the *Innis* definition loses its force. Therefore, for purposes of a ch. 980 trial, we conclude that the definition of incriminating adopted by the court of appeals in *Zanelli II* is the appropriate one.

---

[11] *Miranda v. Arizona,* 384 U.S. 436 (1966).

¶ 31. We first consider Mark's oral admission to his parole officer concerning his sexual activity with his stepson. Because this conduct related to the offenses for which Mark was already charged and convicted, we conclude, as did the court of appeals, that it could not subject Mark to future criminal prosecution. We, therefore, agree with the court of appeals that the statement was properly admitted by the circuit court.

¶ 32. Next, we turn to Mark's written statement concerning his interactions with the woman from his church. Although such contact was a violation of the rules of his parole, the conduct, in and of itself, was not criminal in nature. Therefore, as it could not subject Mark to a future criminal prosecution, but could merely be used against him in a parole revocation proceeding, we conclude that the statement was not incriminating. We agree with the court of appeals' decision that the statement was properly admitted at Mark's ch. 980 trial.

¶ 33. Finally, we turn to the two statements—one written, one oral—concerning the hotel bathroom incident. In the written statement, Mark admitted to entering his neighbor's hotel room without permission, and upon finding her in the bathroom, trying to forcibly gain entrance to that room against her protestations. In the oral statement, Mark indicated that his motivation in the hotel bathroom incident was to have sex with his neighbor. Again, we agree with the court of appeals that the admissions could serve as the basis for one or more possible charges such as the charge of attempted sexual assault. As the statements, themselves, appear to be admissions upon which criminal charges could be

22

based, we remand the case for a determination of whether there was compulsion. As the court of appeals noted, "[a]t a minimum, the written statement could subject Mark to prosecution for disorderly conduct under Wis. Stat. § 947.01." *Mark,* 280 Wis. 2d 436, ¶ 28. Since the statements could subject Mark to future criminal prosecution, they were incriminating.[12] *See Zanelli II,* 223 Wis. 2d at 568.

[12] While the written statement contains information which *could* incriminate Mark in a subsequent criminal prosecution, the heading on the statement leads us to remand the case for a determination of whether there was compulsion, and for review of all of the circumstances, including those that relate to immunity. *Supra,* ¶ 4.

The concurrence of Justice Roggensack, which is based on this court's holding in *Evans,* 77 Wis. 2d 225, claims that the written statement was not incriminating, since the heading on the statement granted Mark limited use immunity. Justice Roggensack's concurrence, ¶ 45.

In *Evans,* we noted, however, that the limited use immunity discussed therein only applies where the statement is given "in response to questions by a probation or parole agent or at a probation or parole revocation hearing, which questions are prompted by pending charges or accusations of particular criminal activity. . . ." *Evans,* 77 Wis 2d at 235. Prior to the taking of testimony, upon remand, concerning the circumstances surrounding the giving of the written statement by Mark, it is impossible to determine whether the conditions required for a grant of limited use immunity ever existed.

*Evans* requires "timely objection in criminal proceedings," permits the use of such statements for purposes of impeachment or rebuttal, at least where a defendant testifies to matters directly contrary to what is stated in the excluded statement, and discusses the possibility of a charge of perjury where such statement is inconsistent with a statement previously made. *Id.* It is premature, in this case, to assess the applicability of *Tate,* 257 Wis. 2d 40, *Thompson,* 142 Wis. 2d 821, or *Evans,* 77 Wis. 2d 225.

¶ 34. We conclude that the statements involving the incident at the hotel require us to remand the matter to the circuit court, in order to determine whether those statements were compelled. If the circuit court determines that either or both statements were compelled, and thus should have been excluded pursuant to the Fifth Amendment, the court must also engage in a harmless error analysis. *Arizona v. Fulminante,* 499 U.S. 279, 295 (1991).[13]

### III

■■

¶ 35. The second issue before this court is whether the circuit court properly exercised its discre-

---

[13] Mark also makes a separate argument that the statements should be prohibited merely by applying the due process clause of the Fourteenth Amendment without reference to his Fifth Amendment privilege. We decline to reach this issue, as we agree with the court of appeals that "with respect to the use of a defendant's involuntary statements in criminal cases, the rights conferred by the due process clause and the Fifth Amendment are coextensive." *Mark,* 280 Wis. 2d 436, ¶ 33. *See also Malloy v. Hogan,* 378 U.S. 1, 8 (1964)("The [due process clause of the] Fourteenth Amendment secures against state invasion the same privilege that the Fifth Amendment guarantees against federal infringement—the right of a person to remain silent unless he chooses to speak in the unfettered exercise of his own will, and to suffer no penalty . . . for such silence.").

In addition, Mark asks this court to find a right to remain silent in a ch. 980 trial under Article I, Section 8 of the Wisconsin Constitution, whether or not exclusion of his statements is mandated under the Fifth Amendment. Because he raises this issue for the first time on appeal, we decline to address the issue. *See State v. Hansford,* 219 Wis. 2d 226, 243 n.16, 580 N.W.2d 171 (1998) (this court will ordinarily not consider an argument not raised in the circuit court); *State ex rel. Warren v. Schwarz,* 219 Wis. 2d 615, 634, 579 N.W.2d 698 (1998) (this court will ordinarily not consider an argument not raised in the court of appeals).

tion in excluding evidence of the conditions of Mark's probation supervision from his ch. 980 commitment trial. In most cases, the exercise of a circuit court's discretion is reviewed under a deferential standard. *State v. Richard G.B.,* 2003 WI App 13, ¶ 7, 259 Wis. 2d 730, 656 N.W.2d 469. However, as this case involves the court's construction of Wis. Stat. § 980.01(7) and related provisions, we are presented with a question of law which we review de novo. *Id.*

¶ 36. We have consistently held that statutory interpretation " 'begins with the language of the statute. . . .' " *State ex rel. Kalal v. Circuit Court for Dane County,* 2004 WI 58, ¶ 45, 271 Wis. 2d 633, 681 N.W.2d 110 (citations omitted). In construing a statute, we give the statutory language "its common, ordinary, and accepted meaning, except that technical or specially-defined words or phrases are given their technical or special definitional meaning." *Id.* (citations omitted).

¶ 37. Wisconsin Stat. § 980.01(7) defines "sexually violent person" as:

> *a person who has been convicted of a sexually violent offense,* has been adjudicated delinquent for a sexually violent offense, or has been found not guilty of or not responsible for a sexually violent offense by reason of insanity or mental disease, defect, or illness, *and who is dangerous because he or she suffers from a mental disorder that makes it likely that the person will engage in acts of sexual violence.*

Wis. Stat. § 980.01(7)(emphasis added). "Mental disorder," in turn, "means a congenital or acquired condition affecting the emotional or volitional capacity that predisposes a person to engage in acts of sexual violence."

Wis. Stat. § 980.01(2). Finally, "likely" is defined in the statutes as "more likely than not." Wis. Stat. § 980.01(1m).

¶ 38. Mark contends that the circuit court's exclusion of evidence concerning the conditions of his probation supervision constituted error, as the conditions (such as degree of supervision) are relevant in regard to his future dangerousness, which is an element in the statutory definition of a sexually violent person. *See* Wis. Stat. § 980.01(7).

¶ 39. There have been two recent court of appeals' decisions addressing similar issues to those raised by Mark. In *State v. Lombard (Lombard II)*, the court of appeals determined that the circuit court had not erred when, during a ch. 980 trial, it refused to answer the jury's question which asked whether Lombard would remain under supervision, even if the jury was to find he was not sexually violent. *State v. Lombard (Lombard II)*, 2004 WI App 52, ¶ 6, 271 Wis. 2d 529, 678 N.W.2d 338. The circuit court's refusal was based upon its conclusion that such evidence was irrelevant to the jury's task, which was to determine whether Lombard was still a sexually violent person. In order to answer that question, the jury had to decide whether Lombard had a mental disorder that made it substantially probable that he would engage in future acts of sexual violence. *Id.,* ¶ 16. Because it concluded that the question of Lombard's supervision in the absence of a ch. 980 commitment was irrelevant to the question before the jury, the court of appeals concluded that the circuit court properly exercised its discretion when the court refused to answer the jury's question. *Id.,* ¶ 21.

¶ 40. Additionally, in *State v. Thiel,* the court of appeals determined that an independent examiner's recommendation that a ch. 980 committee be placed on

supervised release did not provide the probable cause necessary to warrant a full evidentiary hearing as to whether the committee was still a "sexually violent person" under § 980.01(7). *State v. Thiel*, 2004 WI App 140, 275 Wis. 2d 421, 685 N.W.2d 890. The court of appeals rejected Thiel's argument that the recommendation for supervised release constituted strong evidence that he was no longer sexually violent under chapter 980, stating:

> By the plain language of the statute, the question at the probable cause hearing is not whether the individual is substantially probable to engage in acts of sexual violence if placed on supervised release or even if discharged from commitment; the statute draws no such distinction. Rather, the question at the probable cause stage is simply whether it is substantially probable that the person will engage in acts of sexual violence without regard to any specific restrictions, supervision or time frame. It is a black-and-white determination—it is either substantially probable that the person will engage in acts of sexual violence or it is not.

*Id.,* ¶ 17.

¶ 41. The decision in *Thiel* lends support to our conclusion that the plain language of Wis. Stat. § 980.01(7) makes the existence of a mental disorder—not any extrinsic factors—the first step in determining dangerousness and the substantial probability of the person engaging in future acts of sexual violence. Therefore, we affirm the decision of the court of appeals, upholding the circuit court's exclusion of the conditions of Mark's probation supervision from his chapter 980 trial because, under the terms of § 980.01(7), such evi-

27

dence was irrelevant in determining whether he was a "sexually violent person."

## IV

¶ 42. In conclusion, we affirm the decision of the court of appeals and remand this case for further proceedings. In doing so, we conclude that Wis. Stat. § 980.05(1m) grants a ch. 980 respondent the same rights at the ch. 980 commitment trial as a defendant is entitled to in a criminal case. We hold that in order for a statement to be properly excluded under the Fifth Amendment privilege against self-incrimination, as applied to the states through the Fourteenth Amendment's due process clause, it must be testimonial, compelled and incriminating. We further determine that while an individual has a prepetition or prearrest right against self-incrimination, that right is ordinarily not self-executing and must be invoked. Therefore, we withdraw any language to the contrary in *Zanelli I*, 212 Wis. 2d 358. Finally, we conclude that the conditions of Mark's probation are irrelevant to the determination of whether or not he is a sexually violent person pursuant to Wis. Stat. § 980.01(7) and were therefore properly excluded by the circuit court.

*By the court.* The decision of the court of appeals is affirmed, and the case is remanded to the circuit court for further proceedings in accord with this opinion.

¶ 43. PATIENCE DRAKE ROGGENSACK, J. (*concurring*). Charles W. Mark (Mark) made four statements that are examined in this appeal. The majority opinion remands two of the statements to the circuit court to determine whether they were compelled. Ma-

jority op., ¶¶ 2, 33. I write because I conclude that there is no reason to remand the statement Mark wrote on his parole report form because that statement cannot be used against him in a criminal proceeding and therefore it is not incriminating. Accordingly, I would remand to the circuit court only Mark's oral statement to his parole agent to determine whether it was compelled, and I join the majority opinion in all aspects not inconsistent with this concurrence.

¶ 44. The parole report form on which Mark reported his efforts to gain entry to a neighboring woman's bathroom contains the following pre-printed representation by the State: "I have been advised that . . . none of this information can be used against me in criminal proceedings." The majority opinion does not give this statement proper effect. *See* majority op., ¶ 33 n.12. In my view, the State's representation is dispositive of whether Mark's written statement is incriminating within the meaning of the Fifth Amendment.

¶ 45. The State may require a parolee to truthfully report his conduct as a condition of probation, but not without a grant of immunity that limits its use. *State v. Evans*, 77 Wis. 2d 225, 235, 252 N.W.2d 664 (1977). As we explained in *Evans* where testimony from a probationer was sought, "The state may, however, compel a person's testimony if he is protected by a grant of immunity that renders the compelled testimony inadmissible against the witness in a criminal prosecution." *Id.* In my view, the representation by the State that Mark's statements on the parole report form will not be used in any subsequent criminal prosecution afforded Mark limited immunity as a condition to Mark's accurate reporting of his activities while on

parole. As we explained in *Evans,* statements by a probationer or parolee may be given a type of immunity from prosecution:

> Because the defendant here was not made aware that any statements he made could not be used against him in a subsequent criminal proceeding arising out of the same fact situation . . . this case must be returned to the Department for the purpose of conducting a revocation hearing if the Department so desires. At that time the defendant may be properly advised with respect to the limited use immunity herein declared.

*Id.* at 236. The State did what we suggested in *Evans* by the representation it made to Mark on the parole report form: it granted limited use immunity for his statement. In so doing, the State removed the possibility of Mark's statement being used in a subsequent criminal proceeding.

¶ 46. Additionally, in order for testimony to be incriminating under the terms of the Fifth Amendment, it must be possible to use either the statement, or information obtained as a result of the statement, in a subsequent criminal prosecution of the person making the statement. *Hiibel v. Sixth Judicial Dist. Court of Nevada,* 542 U.S. 177, 178–79 (2004). As the United States Supreme Court has explained:

> The Fifth Amendment prohibits only compelled testimony that is incriminating . . . and protects only against disclosures that the witness reasonably believes could be used in a criminal prosecution or could lead to other evidence that might be so used.

*Id.* (citations omitted). The statement Mark made to his parole agent cannot be incriminating because he was required to truthfully report his activities on the parole report form and the State represented to Mark that his

statement would not be used against him in a subsequent criminal prosecution.

¶ 47. Therefore, while I agree with the majority opinion's conclusion that Wis. Stat. § 980.05(1m) grants a potential ch. 980 committee the same rights at trial that a criminal defendant has at a criminal trial, majority op., ¶ 2, and that *State v. Zanelli,* 223 Wis. 2d 545, 589 N.W.2d 687 (Ct. App. 1998) (*Zanelli II*) requires the exclusion of evidence in a ch. 980 trial only if the evidence is testimonial, incriminating and compelled, majority op., ¶ 2, I disagree with the conclusion of the majority opinion that Mark's written statement is incriminating. *See* majority op., ¶ 33.

¶ 48. If Mark's statement is to be excluded from his ch. 980 trial, according to the standard set out in *Zanelli II* and adopted by the majority opinion, the statement must be incriminating, as well as testimonial and compelled. Use of a statement in a ch. 980 trial does not make the statement incriminating, as the court of appeals explained:

> The fact that such statements can be used in a ch. 980, Stats., case does not mean that the statements could incriminate him in a pending or subsequent criminal prosecution as ch. 980 is a civil commitment proceeding, not a criminal proceeding.

*Zanelli II,* 223 Wis. 2d at 568. Furthermore, the immunity granted to Mark on the parole report form prevents use of the statement in a criminal prosecution. *Evans,* 77 Wis. 2d at 235. Therefore, remanding Mark's written statement for further circuit court determination is inconsistent with the aforementioned conclusions of *Zanelli II* and the majority opinion's adoption of those criteria for the exclusion of evidence at a ch. 980

trial. Accordingly, because I would remand to the circuit court only Mark's oral statement to his parole agent, I respectfully concur.

¶ 49. I am authorized to state that Justice ANN WALSH BRADLEY joins this concurrence.

¶ 50. LOUIS B. BUTLER, JR., J. (*concurring in part, dissenting in part*). Wisconsin Stat. § 980.05(1m) provides, in relevant part, that "[a]ll constitutional rights available to a defendant in a criminal proceeding are available to the person" who is the subject of a sexually-violent-person petition under § 980.02. The majority concludes that this provision "grants a ch. 980 respondent the same rights at his or her ch. 980 commitment trial as a defendant is entitled to in a criminal case." Majority op., ¶ 2. Since a defendant in a criminal proceeding has a Fifth Amendment privilege against self-incrimination, the majority reasons that any statements by a defendant which are 1) testimonial; 2) compelled; and 3) incriminating must be excluded at a ch. 980 commitment trial. Majority op., ¶¶ 28, 42. The majority defines "incriminating" as "statements [that] could incriminate [one] in a pending or subsequent criminal prosecution. . . ." Majority op., ¶ 29 (citing *State v. Zanelli,* ("*Zanelli II*") 223 Wis. 2d 545, 568, 589 N.W.2d 687 (Ct. App. 1998). Applying that definition to the ch. 980 proceeding, the majority remands two of the four statements at issue it determines to be incriminating to the circuit court to determine whether those statements were compelled. Majority op., ¶¶ 30–34.

¶ 51. I respectfully disagree with the majority's analysis as well as its conclusion. I conclude that the majority first misapplies Wis. Stat. § 980.05(1m) to provide for constitutional protections that do not exist

32

in a ch. 980 proceeding, and then mischaracterizes *Zanelli II* to develop a definition of "incriminating" which is not grounded in the Fifth Amendment privilege against self-incrimination and which is inconsistent with the definition provided by the United States Supreme Court in *Rhode Island v. Innis,* 446 U.S. 291, 301 n.5 (1980).

¶ 52. I conclude that statements made to a parole agent would be admissible in a civil ch. 980 proceeding, and that a proper application of the Fifth Amendment privilege in such a proceeding would result in the exclusion of testimonial, compelled, incriminating statements at a subsequent criminal proceeding only. I would thus admit all four statements in the ch. 980 proceeding against Mark, but bar their admission in subsequent criminal proceedings. I would also adhere to the definition of "incriminating" set forth previously by the United States Supreme Court. I therefore concur in part, and dissent in part from the court's decision and mandate.[1]

I

¶ 53. The Wisconsin Legislature has provided persons being tried to determine whether they are sexually violent with all constitutional rights available to a defendant in a criminal proceeding. Wis. Stat. § 980.05(1m). In doing so, the legislature has not spelled out how those rights should be applied at a ch. 980 proceeding.

¶ 54. At issue in this case is how the Fifth Amendment should be applied to ch. 980 respondents under Wis. Stat. § 980.05. The Fifth Amendment to the United States Constitution provides, in pertinent part,

---

[1] I join Part III of the majority opinion.

that "[n]o person . . . shall be compelled *in any criminal case* to be a witness against himself." U.S. Const. amend. V (emphasis added). The majority, in applying Wis. Stat. § 980.05(1m), apparently reads this provision in conjunction with the statute to mean that the privilege against self-incrimination applies to ch. 980 proceedings, thereby allowing a person subject to a ch. 980 proceeding to refuse to answer any questions that may be used to incriminate the person in a future criminal case. The majority then applies the label "self-incrimination" to ch. 980 proceedings, instead of applying the constitutional right that is protected. The constitutional right that is protected is that no person shall be compelled to be a witness against himself *in any criminal case,* and not merely that no person is compelled to be a witness against himself.

¶ 55. This court has recognized that ch. 980 proceedings are not criminal trials, but are civil proceedings that authorize the civil commitment of persons previously convicted of a sexually violent offense, who currently suffer from a mental disorder that predisposes them to commit such acts. *State v. Post,* 197 Wis. 2d 279, 294, 541 N.W.2d 115 (1995). The purpose of civil commitment "is to treat the individual's mental illness and protect him and society from his potential dangerousness." *Id.* at 308 (quoting *Jones v. United States,* 463 U.S. 354, 368 (1983)). The court has specifically held that "ch. 980 was not enacted to punish convicted sex offenders but rather to protect public safety and treat sexually violent persons." *State v. Carpenter,* 197 Wis. 2d 252, 274, 541 N.W.2d 105 (1995). Consequently, ch. 980 trials are not criminal cases, and as such, the Fifth Amendment does not preclude the use of compelled incriminating statements in ch. 980 proceedings, so long as those statements are not used in subsequent

criminal proceedings. The Fifth Amendment precludes such use in criminal cases only.[2] *See Allen v. Illinois,* 478 U.S. 364 (1986) (*"Allen I"*); *State v. Lombard,* 2004 WI 95, ¶¶ 42–43, 273 Wis. 2d 538, 684 N.W.2d 103. The grant of constitutional rights available to a defendant in a criminal prosecution to respondents in a ch. 980 proceeding does not alter the fundamental character of the Fifth Amendment. The statute cannot be construed to confer nonexistent constitutional rights.[3]

¶ 56. I would follow the lead of the Illinois Supreme Court and conclude that there is no privilege against self-incrimination in sexually-dangerous-person proceedings. *See People v. Allen,* 107 Ill. 2d 91, 103, 481 N.E.2d 690 (1985) (*"Allen II"*). There, the court noted that since treatment, not punishment, is the aim

---

[2] I do not mean to suggest that the Fifth Amendment privilege cannot be asserted in a civil proceeding. It has "long been recognized in Wisconsin that a person may invoke the fifth amendment in a civil case in order to protect himself [or herself] from the use of such evidence against him [or her] in a subsequent criminal action . . . ." *Molloy v. Molloy,* 46 Wis. 2d 682, 687, 176 N.W.2d 292 (1970) (citation omitted). However, "[a]ssertion of the fifth amendment does not itself result in the right to remain silent in the face of interrogation during the course of civil proceedings. '[T]he pendency of criminal proceedings does not by itself excuse a witness of his obligation to give testimony in civil proceedings. Some nexus between the risk of criminal conviction and the information requested must exist.' " *B & B Investments v. Mirro Corp.,* 147 Wis. 2d 675, 686, 434 N.W.2d 104 (Ct. App. 1988) (citation omitted). The Fifth Amendment privilege is protected by precluding the use of any compelled statements in subsequent criminal proceedings.

[3] This does not render Wis. Stat. § 980.05(1m) superfluous. Properly applied, that statute would ensure that any compelled statements used during a ch. 980 proceeding cannot be used against the respondent in any future criminal proceeding.

of the statute, the legislative determination that the proceedings are civil in nature was eminently reasonable. *Id.* at 100–01. The court reasoned that "the state has a substantial interest in treating as well as protecting the public from sexually dangerous persons," and that its substantial interest would be almost totally thwarted by a strict application of the privilege. *Id.* at 102–03. As the court so aptly put it, "[i]f a defendant is allowed to refuse to answer questions during a psychiatric interview then it would be nearly impossible for the State to determine whether or not the defendant was sexually dangerous." *Id.* at 103.

¶ 57. The persuasive analysis of the Illinois court is certainly applicable here. Our sexually-dangerous-persons provisions, like those in Illinois, are also civil in nature. Our statute's purpose, as in Illinois, is to provide treatment and to protect the public from sexually-dangerous persons. While this case involves statements made to a parole agent as opposed to a psychiatrist, to allow a person to refuse to truthfully and accurately account to his or her agent the person's whereabouts and activities would similarly frustrate the purposes of the sexually-dangerous-person provisions by making it more difficult to determine if the person was sexually dangerous. It makes perfect sense to require a potential committee to communicate with probation and parole agents and psychiatrists as part of the process in determining whether the person is dangerous and in need of treatment. We should encourage procedures that lead to a proper determination of dangerousness, not frustrate them.

¶ 58. The Illinois court was mindful of the problems associated with allowing a person who might be sexually dangerous to refuse to answer questions which might incriminate him or her as a means of protecting

that person's Fifth Amendment privilege against self-incrimination in future criminal proceedings. *Id.* at 103. The court concluded that to allow even a limited privilege "would unduly frustrate the purposes of the sexually dangerous persons provisions by making it nearly impossible to identify sexually dangerous persons." *Id.* Accordingly, citing *Estelle v. Smith*, 451 U.S. 454, 468–69 (1981), the court concluded that statements made to a psychiatrist in a compulsory examination under the sexually-dangerous person provisions may not be used against him in subsequent criminal proceedings. *Id.* at 104. "Consequently, defendants must answer all questions at such examinations regardless of the possible incriminatory nature of the answers." *Id.*

¶ 59. The United States Supreme Court subsequently affirmed the procedure approved by the Illinois Supreme Court. *Allen I*, 478 U.S. 364. The nation's high court noted that Illinois had expressly provided that proceedings under the act were civil in nature. *Id.* at 368. The Court determined that the state had disavowed any interest in punishment, provided for treatment of those it commits, and established a system under which committed persons could be released permanently or conditionally. *Id.* at 370. The Court indicated that in Illinois, the "proceedings under the Act are accompanied by procedural safeguards usually found in criminal trials[,]" including the right to counsel, the right to demand a jury trial, the right to confront and cross-examine witnesses, and a burden of proof upon the state beyond a reasonable doubt. *Id.* at 371. Yet, the court concluded that the proceedings under the Act were not "criminal" within the meaning of the Fifth Amendment privilege. *Id.* at 374.

¶ 60. Moreover, the Court reasoned that the Illinois Supreme Court ruled that a person whom the state attempts to commit under the Act is protected from use

37

of the compelled answers in subsequent criminal proceedings. *Id.* at 368. Thus, "[w]hat we have here . . . is not a claim that petitioner's statements . . . might be used to incriminate him in some future criminal proceeding, but instead his claim that because the sexually-dangerous-person proceeding is itself 'criminal,' he was entitled to refuse to answer any questions at all." *Id.* In approving the Illinois court's handling of the case, the Court concluded that:

> [t]his Court has never held that the Due Process Clause of its own force requires application of the privilege against self-incrimination in a noncriminal proceeding, where the privilege is protected against his compelled answers in any subsequent criminal case. We decline to do so today.

*Id.* at 374.

¶ 61. I agree with the approach taken by the Illinois Supreme Court in *Allen II,* and approved by the United States Supreme Court in *Allen I.* Our statute provides a person facing commitment with all constitutional rights available to a defendant in a criminal proceeding, no more and no less. There is no constitutional privilege against compulsory self-incrimination available to a defendant in a sexually-dangerous-person proceeding, as the proceeding is civil, not criminal, so long as any compelled statements are precluded from use in subsequent criminal proceedings. By excluding statements made in anticipation of a ch. 980 proceeding to a probation and parole agent in subsequent criminal actions against the person, the privilege against compulsory self-incrimination is protected.[4] I would not, as an

---

[4] If the State had decided to forego a ch. 980 commitment proceeding and instead initiate new criminal charges against Mark, then the use and derivative use immunity rule would

alternative means of protecting the privilege in some potential future prosecution, allow a defendant to refuse to provide the very answers that would enable a court to determine whether he or she should be committed as a sexually-dangerous person. The State of Wisconsin has a substantial interest in treating the person's mental illness and protecting that person and society from his or her future dangerousness. Accordingly, I would admit all four statements in the ch. 980 proceeding against Mark, but bar their admission in subsequent criminal proceedings.

## II

¶ 62. The majority defines "incriminating" as "statements [that] could incriminate [one] in a pending or subsequent criminal prosecution. . . ." Majority op., ¶ 29 (citing *Zanelli II,* 223 Wis. 2d at 568). In doing so, the majority inadvertently mischaracterizes *Zanelli II* by taking the language out of context in providing the above definition when, in fact, the *Zanelli II* court was saying something else. The actual language taken from *Zanelli II* is as follows:

> Zanelli never specifies the statements he is challenging and has not set forth any facts to establish that he was compelled to choose between giving answers that would incriminate him and risking revocation of his conditional liberty. A review of the record reveals that Coffey,

apply to both revocation proceedings and the new criminal charges. *See State ex rel. Tate v. Schwarz,* 2002 WI 127, ¶¶ 17–22, 257 Wis. 2d 40, 654 N.W.2d 438; *State v. Evans,* 77 Wis. 2d 225, 234, 252 N.W.2d 664 (1977); *State v. Thompson,* 142 Wis. 2d 821, 825, 831, 419 N.W.2d 564 (Ct. App. 1987). As he was not charged with any new crimes as a result of his statements, that rule is not applicable or necessary to ch. 980 proceedings if we adopt the Illinois procedure.

Miller, and Porter testified regarding the 1977 and 1991–92 matters for which Zanelli had already been convicted, so such statements could not subject Zanelli to future criminal prosecution. Further, any statements about Zanelli's background, including his employment and family, could not, by themselves, incriminate Zanelli in a subsequent criminal prosecution. The fact that such statements can be used in a ch. 980, Stats., case does not mean that the statements could incriminate him in a pending or subsequent criminal prosecution *as ch. 980 is a civil commitment proceeding, not a criminal proceeding. See State v. Carpenter,* 197 Wis. 2d 252, 270–72, 541 N.W.2d 105, 112–13 (1995).

*Zanelli II,* 223 Wis. 2d at 568 (emphasis added).

¶ 63. *Zanelli II* cited this court's decision in *Carpenter* when it stated that ch. 980 proceedings were civil, not criminal. *Carpenter,* in turn, cites to the analysis in *Allen I* in determining that the principal purposes of ch. 980 are the protection of the public and the treatment of convicted sex offenders who are at risk to offend, and not punishment. *Carpenter,* 197 Wis. 2d at 270–72. Accordingly, instead of creating a new definition for "incriminating," the *Zanelli II* court was merely applying *Allen I* in determining why no privilege against compulsory self-incrimination applies to ch. 980 civil proceedings. A new definition for the word "incriminating" can be discerned only by adding words to what was written by the court and deleting a portion of the sentence, and that has the effect of altering the meaning. I instead view *Zanelli II* as being consistent with Part I of this concurring/dissenting opinion, and not creating a new definition for the term "incriminating."

¶ 64. As the majority notes, "incriminating response" has already been defined by the United States Supreme Court. Majority op., ¶ 30. "By 'incriminating

40

response' we refer to any response—whether inculpatory or exculpatory—that the *prosecution* may seek to introduce at trial." *Innis,* 446 U.S. at 302 n.5 (emphasis in original). The Court continued by quoting *Miranda* in the footnote to explain its meaning:

No distinction can be drawn between statements which are direct confessions and statements which amount to "admissions" of part or all of an offense. The privilege against self-incrimination protects the individual from being compelled to incriminate himself in any manner; it does not distinguish degrees of incrimination. Similarly, for precisely the same reason, no distinction may be drawn between inculpatory statements and statements alleged to be merely "exculpatory". If a statement made were in fact truly exculpatory it would, of course, never be used by the prosecution. In fact, statements merely intended to be exculpatory by the defendant are often used to impeach his testimony at trial or to demonstrate untruths in the statement given under interrogation and thus to prove guilt by implication. These statements are incriminating in any meaningful sense of the word and may not be used without the full warnings and effective waiver required for any other statement.

*Miranda v. Arizona,* 384 U.S. 436, 476–77 (1966).

¶ 65. I see no reason to deviate from the definition provided by our high court in *Innis.* That definition is perfectly consistent with the Fifth Amendment, which, after all, provides that no person shall be compelled in a criminal case to be a witness against oneself. Compelling a person to give information and then seeking to use that information in a trial against that person, whether that information was inculpatory or exculpatory, is the same as compelling a person to be a witness against oneself. We must be ever mindful that the privilege to be applied is not the label (compulsory

41

self-incrimination), but the constitutional provision itself (to not be a witness against oneself in a criminal proceeding). I would not do damage to the Fifth Amendment privilege by redefining it, particularly when the privilege does not apply to ch. 980 civil proceedings. *Zanelli II* does not redefine "incriminating" or "incriminating response;" it merely adopts *Carpenter,* which in turn adopts *Allen I.* I would do the same, and avoid satellite litigation on what constitutes "incriminating response" down the road.

### III

∘ ¶ 66. I conclude that statements made to Mark's parole agent are admissible in his civil ch. 980 proceeding, and that a proper application of the Fifth Amendment privilege in such a proceeding would result in the exclusion of testimonial, compelled, incriminating statements at a subsequent criminal proceeding only. I would thus admit all four statements in the ch. 980 proceeding against Mark, but bar their admission in subsequent criminal proceedings. I would also adhere to the definition of "incriminating" set forth previously by the United States Supreme Court. I therefore concur in part, and dissent in part from the court's decision and mandate.