COURT OF APPEALS
DECISION
DATED AND FILED

December 7, 2021

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2020AP345-CR**

STATE OF WISCONSIN

Cir. Ct. No. **2019CT66**

**IN COURT OF APPEALS
DISTRICT III**

STATE OF WISCONSIN,

   PLAINTIFF-RESPONDENT,

V.

ANNE E. STRECKENBACH,

   DEFENDANT-APPELLANT.

---

APPEAL from a judgment of the circuit court for Outagamie County: EMILY I. LONERGAN, Judge. *Affirmed*.

¶1     STARK, P.J.[1]  Anne Streckenbach appeals a judgment convicting her of operating a motor vehicle while intoxicated (OWI), as a second offense. Streckenbach argues that the circuit court should have granted her motion to

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2) (2019-20). All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

suppress evidence because the officer who arrested her violated her constitutional right to be free from self-incrimination by "extensively interrogat[ing] her prior to her formal arrest." We conclude the officer's questions were permissible within the context of his investigatory stop of Streckenbach's vehicle. We therefore affirm.

## BACKGROUND

¶2 A criminal complaint charged Streckenbach with OWI and operating with a prohibited alcohol concentration (PAC), both as second offenses. Streckenbach moved to suppress all evidence gathered by the officer who arrested her on the grounds that he had violated her right to be free from self-incrimination under the Fifth Amendment to the United States Constitution and article I, section 8 of the Wisconsin Constitution. Streckenbach's motion alleged the following facts, which are not disputed on appeal.

¶3 Officer Jason Schmitz of the Appleton Police Department stopped a vehicle that Streckenbach was driving after he observed it deviating from its lane of travel. After approaching Streckenbach, Schmitz observed indicia of intoxication, and he therefore decided to ask Streckenbach to perform field sobriety tests. However, before doing so, Schmitz asked Streckenbach the following questions:

> (A) What level of education she achieved;
>
> (B) Whether she wears contacts, and whether they are hard or soft;
>
> (C) What time it currently was without looking at a clock or watch;
>
> (D) What the date was, again without looking;
>
> (E) How many hours of sleep she had;

(F) What time she went to sleep the night before [the] stop;

(G) What time she woke up that morning;

(H) Whether the number of hours she slept was "normal" for her;

(I) Whether she was under a doctor's care for anything;

(J) Whether she took any medications;

(K) What medications did she take;

(L) When her last dose was taken;

(M) Whether she had been to a dentist within the last 24 hours;

(N) Whether she had any injuries;

(O) Whether she suffered from epilepsy or diabetes;

(P) Where she was going prior to her detention;

(Q) How many drinks she consumed before driving;

(R) What kind of drinks had she consumed;

(S) Where she consumed the drinks;

(T) What time she consumed the first drink;

(U) What time she consumed the last drink;

(V) Whether she took any street drugs;

([W]) Whether she felt she was under the influence; and

([X]) Whether she was operating her motor vehicle at the time she was stopped.

¶4    These questions appear on a Wisconsin Department of Transportation form entitled "Alcohol/Drug Influence Report." According to Streckenbach, that form is typically read to an OWI suspect after he or she has

been arrested and has been given *Miranda*[2] warnings, which are printed on the form.

¶5      Schmitz did not give Streckenbach *Miranda* warnings before asking the questions listed above.  After Schmitz asked the questions, Streckenbach performed field sobriety tests, which she failed.  Schmitz then placed Streckenbach under arrest for OWI.

¶6      Following a nonevidentiary hearing, the circuit court denied Streckenbach's suppression motion.  The court reasoned that the law "allows an officer to ask questions related to a traffic stop without giving a *Miranda* warning initially."  The court acknowledged that the questions Schmitz asked were "probably more extensive than most officers might ask."  The court stated, however, that the questions fell within the "general categories" of questions that officers typically ask drivers during investigatory stops, such as "where they were, where they were going, if they had been drinking, how many drinks, [and] have you taken any medication."  The court reiterated that officers are allowed to ask such questions, and it found that Schmitz's questioning of Streckenbach was not "unnecessarily prolonged."  The court further concluded that the questioning did not constitute a custodial interrogation but was instead "basically investigative questions to determine whether or not to do field sobriety testing."

¶7      After the circuit court denied her suppression motion, Streckenbach entered a no-contest plea to the OWI charge, which the court accepted and thereafter found her guilty.  The PAC charge was dismissed on the prosecutor's

---

[2] *See **Miranda v. Arizona**, 384 U.S. 436 (1966).

motion. Streckenbach now appeals, arguing the court erred by denying her suppression motion.[3] *See* WIS. STAT. § 971.31(10) (permitting appellate review of an order denying a motion to suppress evidence, notwithstanding the defendant's guilty or no-contest plea).

## DISCUSSION

¶8      Our review of a circuit court's decision on a motion to suppress evidence presents a question of constitutional fact. ***State v. Knapp***, 2005 WI 127, ¶19, 285 Wis. 2d 86, 700 N.W.2d 899. We will uphold the circuit court's factual findings unless they are clearly erroneous, but we independently determine whether the facts satisfy the relevant constitutional standard. ***Id.*** In this case, the facts are not disputed on appeal, and the only question is whether the facts establish that law enforcement violated Streckenbach's constitutional right to be free from self-incrimination.[4]

¶9      Both the Fifth Amendment to the United States Constitution and article I, section 8 of the Wisconsin Constitution provide that no person shall be compelled to be a witness against him- or herself in any criminal case. *See* U.S. CONST. amend V; WIS. CONST. art. I, § 8. Streckenbach contends that Schmitz

---

[3] The Honorable Nancy J. Krueger denied Streckenbach's suppression motion. The Honorable Emily I. Lonergan entered Streckenbach's judgment of conviction.

[4] The State frames the issue on appeal as whether the circuit court properly denied Streckenbach's suppression motion without an evidentiary hearing. Streckenbach does not appear to argue, however, that the court should have held an evidentiary hearing before denying her motion. Instead, she appears to contend that the facts alleged in her suppression motion—which the State did not dispute in the circuit court—establish a violation of her constitutional right to be free from self-incrimination as a matter of law. As explained below, we reject that argument and conclude, as a matter of law, that the court properly denied Streckenbach's suppression motion.

violated these constitutional provisions when he asked her the twenty-four questions listed above during the course of a routine traffic stop. Her argument fails, however, because she has not established that she was compelled to answer Schmitz's questions.

¶10     "It is … well-established in Fifth Amendment jurisprudence that '[t]he Fifth Amendment prohibits only *compelled* testimony that is incriminating.'" *State v. Mark*, 2006 WI 78, ¶16, 292 Wis. 2d 1, 718 N.W.2d 90 (emphasis added) (citation omitted). A police officer may initiate a traffic stop—which is analogous to a *Terry*[5] stop—when the facts of the case would warrant a reasonable officer, in light of his or her training and experience, to suspect that the driver has committed, is committing, or is about to commit a crime or traffic violation. *See State v. Post*, 2007 WI 60, ¶¶11-13, 301 Wis. 2d 1, 733 N.W.2d 634; *see also Berkemer v. McCarty*, 468 U.S. 420, 439 (1984) (analogizing a traffic stop to a *Terry* stop). During the stop, the officer may "ask the detainee a moderate number of questions to determine [the detainee's] identity and to try to obtain information confirming or dispelling the officer's suspicions." *Berkemer*, 468 U.S. at 439; *see also State v. Betow*, 226 Wis. 2d 90, 93, 593 N.W.2d 499 (Ct. App. 1999) (stating that during a traffic stop, a driver "may be asked questions reasonably related to the nature of the stop—including his or her destination and purpose"). The detainee, however, "is not obliged to respond." *Berkemer*, 468 U.S. at 439.

¶11     Consistent with these principles, this court recently stated that the Fifth Amendment

---

[5] *See Terry v. Ohio*, 392 U.S. 1 (1968).

> does not prohibit the police from asking questions during a *Terry* stop, even though the suspect is not free to leave during the temporary detention. What the Fifth Amendment does prohibit is the use of practices or tactics that compel a person to incriminate himself or herself: tactics which create a coercive custodial environment that is the functional equivalent of a formal arrest in which "the behavior of ... law enforcement officials was such as to overbear [the individual's] will to resist and bring about confessions not freely self-determined."

*State v. D.R.C.*, No. 2019AP1155, unpublished slip op. ¶42 (WI App May 13, 2020) (quoting *Beckwith v. United States*, 425 U.S. 341, 347-48 (1976); citing *Miranda*, 384 U.S. at 457-58).[6]

¶12 Streckenbach does not point to any evidence in the record on appeal suggesting that she was compelled to answer the questions Schmitz asked her after he stopped her vehicle. She does not dispute that Schmitz had reasonable suspicion to stop her vehicle after he observed it deviating from its lane of travel. Nor does she dispute that Schmitz had reasonable suspicion to investigate whether she had committed an OWI based on the indicia of intoxication that he observed during the stop. *See Betow*, 226 Wis. 2d at 94-95 (stating an officer may extend a valid traffic stop if, during the course of the stop, he or she becomes aware of additional facts that give rise to reasonable suspicion that the driver has committed a separate offense). Under *Berkemer*, Schmitz was therefore permitted to ask Streckenbach a moderate number of questions to determine her identity and to confirm or dispel his suspicions. *See Berkemer*, 468 U.S. at 439.

---

[6] Unpublished opinions authored by a single judge may be cited for their persuasive value. *See* WIS. STAT. RULE 809.23(3)(b).

¶13 Streckenbach contends that the number of questions Schmitz asked her—i.e., twenty-four—was not moderate. Under the circumstances of this case, we disagree. Each of the questions that Schmitz asked Streckenbach was relatively brief. Many of the questions called for "yes" or "no" answers, and none of the questions required answers comprised of more than a few words. The circuit court expressly found that the questions did not unnecessarily prolong the stop, and Streckenbach does not challenge that finding on appeal. On these facts, we reject Streckenbach's assertion that the number of questions Schmitz asked exceeded the moderate number of questions that an officer may permissibly ask during a routine traffic stop.

¶14 Streckenbach also contends that the questions Schmitz asked were not reasonably related to the nature of the stop and were not relevant to confirming or dispelling his suspicion that Streckenbach had committed an OWI offense. Again, we disagree. A number of the questions that Schmitz asked were related to whether Schmitz had consumed alcohol or street drugs before driving, whether she was under the influence, and whether she was operating her vehicle at the time she was stopped. Those questions were clearly relevant to confirming or dispelling Schmitz's suspicion that Streckenbach had operated her vehicle while intoxicated. Schmitz's questions asking Streckenbach to provide the date and time without looking at a watch, and his question asking where she was going before the stop, were also relevant to assessing her level of intoxication. If Streckenbach had struggled to provide answers to those questions, it would have further suggested that she was under the influence of alcohol or drugs.

¶15 Schmitz's questions regarding Streckenbach's sleep, whether she was under a doctor's care, whether she was taking medications, whether she had been to the dentist in the last twenty-four hours, whether she was injured, and

whether she suffered from epilepsy or diabetes were relevant to determining whether there was an alternative explanation for Streckenbach's lane deviation and for the indicia of intoxication that Schmitz observed. Those questions—along with the question asking whether Streckenbach wore contacts—were also relevant to assessing Streckenbach's ability to perform field sobriety tests and to interpreting her performance on those tests. Finally, Schmitz's question regarding Streckenbach's level of education was relevant to confirming whether she understood his questions and would be able to understand and follow his directions during the field sobriety tests. We therefore reject Streckenbach's argument that Schmitz's questions were impermissible because they were not reasonably related to the purpose of the traffic stop and did not serve to confirm or dispel Schmitz's suspicion that she had committed an OWI offense.

¶16 Citing *Knapp* and *Missouri v. Seibert*, 542 U.S. 600 (2004), Streckenbach further argues that the questions at issue in this case constituted an impermissible "end-run" around the requirement that police provide *Miranda* warnings before interrogating a suspect. She asserts that the questions Schmitz asked her are found on the "Alcohol/Drug Influence Report" form, which is typically read to an OWI suspect after he or she is arrested and after *Miranda* warnings have been given, and the State does not dispute this assertion. Streckenbach therefore suggests that Schmitz was required to provide *Miranda* warnings before asking her the questions listed on the form.

¶17 This argument fails because *Miranda* warnings are required only when an individual is subjected to a custodial interrogation. *See State v. Dobbs*, 2020 WI 64, ¶52, 392 Wis. 2d 505, 945 N.W.2d 609. In other words, custody is "a necessary prerequisite to *Miranda* protections." *Dobbs*, 392 Wis. 2d 505, ¶53 (citation omitted). A traffic stop "does not rise to the level of 'custody' for

purposes of *Miranda*" unless, under the totality of the circumstances, the driver's "freedom of action is curtailed to a degree associated with a formal arrest." *Dobbs*, 392 Wis. 2d 505, ¶59. Streckenbach does not develop any argument that she was in custody at the time Schmitz asked the questions at issue in this appeal. It is undisputed that Streckenbach was not under arrest at that time, and she does not point to any facts indicating that her freedom of action was curtailed to a degree associated with a formal arrest. We therefore reject Streckenbach's argument that suppression is warranted because Schmitz questioned her before providing *Miranda* warnings, or because the questioning constituted an impermissible "end-run" around *Miranda*.[7]

¶18 Finally, Streckenbach argues that even if Schmitz's questioning did not violate her right to be free from self-incrimination under the Fifth Amendment to the United States Constitution, we should construe article I, section 8 of the Wisconsin Constitution as providing greater protection than the Fifth Amendment under the circumstances of this case. Citing *Knapp*, Streckenbach asserts that "the Wisconsin constitutional prohibition against self-incrimination is *not* co-extensive with the Federal Constitution provision, but rather, extends beyond it."

---

[7] Because Streckenbach has not shown that she was entitled to *Miranda* warnings before Schmitz questioned her, her reliance on *State v. Knapp*, 2005 WI 127, 285 Wis. 2d 86, 700 N.W.2d 899, is misplaced. The issue in *Knapp* was whether physical evidence obtained as a direct result of an intentional *Miranda* violation should be suppressed as fruit of the poisonous tree. *See Knapp*, 285 Wis. 2d 86, ¶¶1-2. Streckenbach has not shown that a *Miranda* violation occurred in this case, much less an intentional violation.

Streckenbach's reliance on *Missouri v. Seibert*, 542 U.S. 600 (2004), is similarly misplaced. In *Seibert*, the Court held that police violated *Miranda* when they arrested the defendant; intentionally refrained from giving her *Miranda* warnings; interrogated her until they obtained a confession; only then gave her *Miranda* warnings; and subsequently obtained a second, substantively identical confession. *Seibert*, 542 U.S. at 604-05. *Seibert* is distinguishable because, unlike Streckenbach, the defendant in *Seibert* was under arrest when the questioning occurred and was thus indisputably in custody for purposes of *Miranda*.

¶19     As noted above, the issue in *Knapp* was whether physical evidence obtained as a direct result of an intentional *Miranda* violation should be suppressed as fruit of the poisonous tree. *See Knapp*, 285 Wis. 2d 86, ¶¶1-2. In addressing that issue, the *Knapp* court acknowledged that a plurality of the United States Supreme Court had recently held in *United States v. Patane*, 542 U.S. 630 (2004), that the fruit of the poisonous tree doctrine did not extend to derivative evidence discovered as a result of a defendant's voluntary statements obtained without *Miranda* warnings. *Knapp*, 285 Wis. 2d 86, ¶1. Nevertheless, the *Knapp* court concluded that suppression was warranted because under article I, section 8 of the Wisconsin Constitution, "the exclusionary rule bars physical fruits obtained from a deliberate *Miranda* violation." *Knapp*, 285 Wis. 2d 86, ¶73.

¶20     The *Knapp* court held that in one specific circumstance, article I, section 8 of the Wisconsin Constitution provided greater protection than the Fifth Amendment to the United States Constitution. However, the circumstance at issue in *Knapp*—i.e., law enforcement obtaining physical evidence as a direct result of an intentional *Miranda* violation—is not present in this case. Streckenbach does not develop any argument explaining why we should interpret the Wisconsin Constitution as providing greater protection than the United States Constitution under the circumstances at issue here—namely, where an officer questioned a suspect during a valid traffic stop at a time when the suspect was not in custody for *Miranda* purposes. We therefore decline to do so.

¶21     For all of the reasons explained above, we conclude that Schmitz did not violate Streckenbach's constitutional right to be free from self-incrimination under either the Fifth Amendment to the United States Constitution or article I, section 8 of the Wisconsin Constitution. As such, the circuit court properly denied

11

Streckenbach's suppression motion, and we therefore affirm her judgment of conviction.

*By the Court.*—Judgment affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.