B&B INVESTMENTS, Plaintiff-Appellant-Cross Respondent.†

v.

MIRRO CORPORATION, Defendant-Respondent-Cross Appellant,

FREIS CORPORATION, Defendant-Cross Respondent,

KURTZ'S, INC., a Wisconsin corporation, Unknown Husbands, Wives, Widows, Widowers, Heirs, Devisees, Legatees, Grantees, Representatives, Assigns, and All Persons Claiming Any Right, Title or Interest in, or Lien Upon Any of the Land Described at the Foot of the Summons, and Generally All Persons, Whom it May Concern, Defendants.

Court of Appeals

*No. 87–1668. Submitted on briefs October 13, 1988.—Decided November 23, 1988.*

(Also reported in 434 N.W.2d 104.)

---

† Petition to review denied.

677

678

On behalf of the plaintiff-appellant-cross respondent the cause was submitted on the briefs of *Bihler & Kuehl, S.C.* of Milwaukee.

On behalf of the defendant-respondent-cross appellant the cause was submitted on the briefs of *Richard P. Carr* and *John R. Stoffer* of *Reinhart, Boerner, Van Deuren, Norris & Rieselbach, S.C.* of Milwaukee.

Before Scott, C.J., Brown, P.J., and Nettesheim, J.

BROWN, P.J.   B & B Investments, a partnership, appeals from an order dismissing its action for quiet title and breach of warranty against Mirro Corporation. We affirm the dismissal, finding it an appropriate sanction for partner Robert T. Burrows' bad faith invocation of the fifth amendment at deposition. Mirro appeals from an order denying its motion for costs and attorney's fees under sec. 814.025, Stats., the frivolous claims statute. We reverse and remand for findings supporting or negating Mirro's claim that B & B's action was initiated in bad faith.

B & B negotiated the purchase of property from Freis Corporation, which in turn had received the property via warranty deed from Mirro. A small portion of the property purchased by B & B was used by a third corporate entity, Kurtz's, Inc., as a parking lot.

An action to quiet title was brought by B & B in June of 1986. In November, Burrows, one of the two B & B partners, was served with a criminal summons and complaint. This complaint alleged Burrows' improper disposal of polychlorinated byphynals (PCB's) that were derived from materials existing on the property involved in the quiet title action.

In February of 1987, the trial court conducted a pretrial conference. Shortly thereafter, and pursuant to the court's discussion with counsel for all parties, an amended scheduling order was issued with depositions expected.

At his deposition in March, Burrows refused to answer questions on the grounds that answering might tend to incriminate him. Burrows' prospective invocation of his fifth amendment right to remain silent had not been made known prior to the deposition.

Six days after the deposition, B & B filed an amended complaint alleging a breach of title warranty by Mirro. On March 26, pursuant to a conference call, the trial court—now informed of the outcome of Burrows' deposition—denied B & B further discovery, scheduled a hearing date on defendant's summary judgment motions, and also *sua sponte* notified the parties that it would consider dismissing B & B's complaint on the date of the hearing.

At the April hearing, the trial court inquired of B & B's counsel as to how answering the deposition questions would tend to jeopardize Burrows' standing in the pending criminal case. Counsel was unable to propose an answer. However, he stated that Burrows would respond fully to deposition questions once the criminal case was resolved, seven months in the future.

The trial court found no connection between the answers sought at deposition and the criminal action. It found that Burrows' assertion of the privilege was in bad faith and that Burrows had invoked the privilege as a delaying tactic to the detriment of the defendants. As a sanction, it dismissed B & B's complaint on the merits.

Alternatively, the trial court granted summary judgment against B & B. It held that the breach of title warranty action could not be maintained in the face of Kurtz's, Inc.'s open and notorious possession of the small piece of property actually in dispute.

Mirro then moved the court to schedule a date for a hearing on costs incurred as a result of B & B's allegedly frivolous action. The motion was denied. In a motion for reconsideration, Mirro renewed the motion for a hearing, alleging B & B's bad faith in instituting the action. The trial court again denied the motion on the grounds that for most of the pendency of the action no claim was pending against Mirro.

B & B sets forth several reasons why dismissal was an inappropriate sanction for Burrows' invocation of his fifth amendment privilege. We address the arguments *seriatim*.

First, B & B argues that the trial court abused its discretion in dismissing the case when no motion to dismiss had been made by the opposing parties. We disagree.

■

The trial court *sua sponte* raised the motion to dismiss in March.

> It is considered well established that a court has the inherent power to resort to a dismissal of an action in the interest of orderly administration of

682

justice. The general control of the judicial business before it is essential to the court if it is to function. "Every court has inherent power, exercisable in its sound discretion, consistent within the Constitution and statutes, to control disposition of causes on its docket with economy of time and effort."

*Latham v. Casey & King Corp.*, 23 Wis. 2d 311, 314, 127 N.W.2d 225, 226 (1964) (answering affirmatively the question of whether a court "has the power to dismiss *sua sponte* an action on its merits upon failure of the plaintiff's attorney to appear at the pretrial conference." *Id.* at 313, 315–16, 127 N.W.2d at 226, 227). We necessarily find that the trial court is not constrained by opposing parties' motions when confronted by what it considers a violation of procedural statutes.

B & B next argues that if the trial court has the power to dismiss on its own motion, plaintiff must be given notice of the sanction and an opportunity to be heard. We agree.

Unless application of sanctions is the self-evident remedy for an overt violation of a court order or rule, the party must be given an opportunity to respond.

> The due-process clause of the fourteenth amendment requires at least a fair and adequate warning by court rule or notice of the imposition of the sanctions or penalties to be invoked for the failure to comply with a court order. Lacking such forewarning, a hearing should be had on the imposition of a penalty.

*Id.* at 316, 127 N.W.2d at 228.

In the instant case, B & B had both notice of the trial court's contemplation of dismissal and an oppor-

tunity to respond. The April 1 affidavit of B & B's attorney states:

> That on the 26th day of March, 1987 ... the Court ... sua sponte, indicated that it would consider dismissing the Complaint of the plaintiff herein on the date of the hearing of the summary judgment motion.
>
> ....
>
> That on the basis of the foregoing, your affiant prays .... [T]hat the Court ... balance the need of any discovery from Robert Burrows ... and the right of the witness Robert Burrows, Jr. to invoke his fifth amendment rights against self-incrimination ... in particular plaintiff specifically requests that this Court consider extending discovery until after the trial of Robert Burrows in the criminal action ....

■ At the April 8 hearing, dismissal and its alternatives were argued by B & B's counsel. We conclude that the requirements of due process were fulfilled by the prior notice of and opportunity to be heard upon the dismissal.

■ Further, the discovery statutes themselves alert deponents that failure to answer can result in dismissal. "Now an attorney may not counsel his client to refuse to answer without incurring the risk of the sanctions in 804.12." Graczyk, *The New Wisconsin Rules of Civil Procedure Chapter 804,* 59 Marq. L. Rev. 463, 496 (1976).

B & B next argues that the trial court cannot dismiss a plaintiff partnership from an action when only an individual principal has asserted the fifth

amendment. B & B argues that such a dismissal unfairly prejudices the other partners who may not have "consented, ratified or approved the assertion of [the fifth amendment] by Robert T. Burrows."

We disagree, for in Wisconsin "each partner is the agent of his or her copartners for the purposes of the partnership business." *Schroeder v. Raich,* 89 Wis. 2d 588, 595, 278 N.W.2d 871, 874 (1979). We hold that since Burrows asserted applicability of the fifth amendment during the course of conducting partnership business, he did so as an agent of the plaintiff partnership; therefore, if dismissal is otherwise appropriate, the fact that plaintiff is a partnership would not render dismissal an unavailable sanction here.

B & B next argues that assertion of the privilege cannot constitute a violation of sec. 804.01(2)(a), Stats. That section states that "[p]arties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action." Thus, the scope of discovery includes any relevant matter unless the matter is privileged. *Id.* Relevant matter that is not also privileged is therefore a proper subject of inquiry.

Section 805.03, Stats., states, in relevant part:

**Failure to prosecute or comply with procedure statutes.** For failure of any claimant to prosecute or for failure of any party to comply with the statutes governing procedure in civil actions or to obey any order of court, the court in which the action if pending may make such orders in regard to the failure as are just, including but not limited to orders authorized under s. 804.12(2)(a).

■
The attendance of a party, including a partnership's principals, may be compelled at deposition, and evidence objected to shall be taken subject to objections. *See* secs. 804.05(1); 804.05(2)(e); 804.05(3)(b)5; 804.05(4)(b), Stats. As already noted, failure by a party to answer properly propounded questions can result in the imposition of sanctions. Thus, if a party deponent refuses to answer questions and the answers are not privileged, failure to answer is a violation of the procedural statutes and the sanctions of sec. 804.12, Stats., including dismissal can be imposed.

■
Assertion of the fifth amendment does not itself result in the right to remain silent in the face of interrogation during the course of civil proceedings. "[T]he pendency of criminal proceedings does not by itself excuse a witness of his obligation to give testimony in civil proceedings. Some nexus between the risk of criminal conviction and the information requested must exist." *Martin-Trigona v. Gouletas,* 634 F.2d 354, 360 (7th Cir.), *cert. denied,* 449 U.S. 1025 (1980). Thus, legitimate invocation of the privilege requires a nexus between the criminal indictment and the requested discovery. Accordingly, if a deponent refuses to answer properly propounded questions at deposition on the improperly asserted ground of privilege, then sec. 804.01(2)(a), Stats., is violated and the trial court, upon proper exercise of discretion, may impose the sanctions of secs, 805.03 and 804.12, Stats.

In the instant case, the trial court had familiarized itself with the criminal complaint and concomitant proceedings. Burrows' reasons for invocation of the fifth amendment were not thereby rendered self-evident. B & B's counsel was then questioned about

Burrows' invocation of the privilege and was also unable to set forth the requisite nexus between those proceedings and the civil action. Following extensive questioning by the trial court, counsel finally stated as the reason for silence that Burrows "feels in his mind in responding to these questions, his response would tend to incriminate him." This is not a nexus.[1]

The trial court's memorandum decision supporting its order of dismissal accurately noted:

> One cannot assert the Fifth Amendment as a bar to answering any question. It is available only where the answer would subject an individual to criminal jeopardy. A cursory glance at the questions asked of the plaintiff at the deposition clearly would indicate that the answers to those questions would not, in any way, jeopardize the plaintiff's standing as a defendant in the criminal prosecution. It is ludicrous to claim that.[2]

■ The trial court then found the claim of privilege "meritless" and that "its only purpose was to delay these proceedings and to deprive the defendants of their rights to civil discovery." In sum, the trial court found the assertion of privilege in bad faith and that Burrows was therefore not in compliance with sec. 804.01(2)(a), Stats. Bad faith failure of a party to

[1]In its reply brief, B & B argues that Burrows refused to answer the deposition questions because answering would "establish a nexus between the unlawful incineration of [PCB's] and Robert T. Burrows upon said property." We note, however, that B & B's ownership of the property and Burrows' status as a partner in B & B are alleged in the original quiet title complaint.

[2]The questions Burrows refused to answer included whether he is a plaintiff in the lawsuit and whether it is his intention to take the fifth amendment to every single question that is asked.

comply with the discovery statutes places the party at risk of the sanctions in sec. 804.12, Stats., including dismissal.

The record supports the trial court's finding of bad faith; nothing indicates a good faith basis for the assertion. Since the finding is supported by the record and not clearly erroneous, it will not be reversed. *Englewood Community Apartments Ltd. Partnership v. Grant & Co.,* 119 Wis. 2d 34, 39, 349 N.W.2d 716, 718 (Ct. App. 1984).[3]

We find no abuse of discretion in the trial court's imposition of harsh sanctions here. The court made findings of bad faith and no merit prior to striking the pleadings. *See Furrenes v. Ford Motor Co.,* 79 Wis. 2d 260, 268, 255 N.W.2d 511, 515 (1977). The court found that B & B and its counsel willfully neglected mentioning the prospective assertion of the fifth amendment when an amended scheduling order was entered following discussion with counsel. The court found that B & B, through Burrows, was engaging in dilatory tactics and viewed its conduct as egregious. It rejected imposition of lesser sanctions. To do so would diminish the seriousness of Burrows' conduct. Willful failure to respond to deposition is a serious abrogation of a plaintiff's statutory duties, and harsh sanctions are within the trial court's discretion precisely for the purpose of discouraging such behavior.

[3]Because the trial court found that the fifth amendment was asserted in bad faith, a finding that is not clearly erroneous, we do not address whether a legitimate assertion of the amendment can per se result in dismissal under sec. 805.03, Stats., or pursuant to other rules or statutes.

B & B also argues that dismissal was premature because no deposition of Burrows was attempted after B & B submitted an amended complaint and "a witness' initial decision to remain silent is not irrevocable." However, Burrows never offered to submit promptly to deposition, even in the face of the trial court's consideration of its *sua sponte* motion to dismiss. We again note that a court has inherent power to control disposition of cases on its docket; it is not required to await a party's unforeshadowed change of heart.

B & B raises objections to the trial court's alternative grounds for entering judgment against it. Because we affirm dismissal on the trial court's primary ground, we do not address B & B's alternative claims for relief.

We turn next to Mirro's cross-appeal from the trial court's denial of its motion for a hearing on costs incurred as a result of the claimed frivolousness of B & B's action. Mirro asserts two grounds upon which it could have proved frivolousness had a hearing been granted. First, Mirro asserts that the quiet title action was brought in bad faith for the purpose of exacting money from Mirro, despite B & B's knowledge that no money was legally owed to it. Second, it asserts that B & B initiated the action intending its principal to take the fifth amendment and thereby hamper Mirro's preparation of a defense, again for the purpose of exacting money to which B & B was not legally entitled.

B & B responds that this court lacks jurisdiction of the cross-appeal because the record contains no written and therefore no final order or judgment

denying Mirro's motion. We disagree. Once appellant has been granted an appeal, respondent may use the cross-appeal procedure and have nonfinal orders reviewed. *Johnson v. Pearson Agri-Sys. Inc.*, 119 Wis. 2d 766, 782–83, 350 N.W.2d 127, 135 (1984). Since appellant has been granted an appeal as of right, this court has jurisdiction of the cross-appeal and we not reach the merits.

Section 814.025, Stats., governing the award of costs for frivolous claims, states in relevant part:

> **(1)** If an action or special proceeding commenced or continued by a plaintiff ... is found, at any time during the proceedings or upon judgment, to be frivolous by the court, the court shall award to the successful party costs determined under s. 814.04 and reasonable attorney fees.
>
> . . . .
>
> **(3)** In order to find an action [or] special proceeding ... frivolous under sub. (1), the court must find one or more of the following:
>
> (a) The action [or] special proceeding ... was commenced, used or continued in bad faith, solely for purposes of harassing or maliciously injuring another.

This section requires the trial court to make findings of fact relevant to the statutory "frivolousness" claimed. *Sommer v. Carr*, 99 Wis. 2d 789, 792, 299 N.W.2d 856, 857 (1981). Attitudes such as bad faith only appear in the record when the trial court finds them present. *Id.* at 793, 299 N.W.2d at 857. Only when the trial court finds the attitude present or denies its presence by findings can this court review them. *Id.* at 792, 299 N.W.2d at 857–58.

In the instant case, the trial court sidestepped Mirro's bad faith claims. Although its rulings do not entirely clarify its thinking on the matter, the trial court seems not to have viewed the quiet title action as an "action or special proceeding" within the scope of sec. 814.025, Stats. In ruling on the motion from the bench, the court stated:

> Right now, on frivolous costs, I find it kind of regrettable, but quite frankly there was no course [sic] of action asserted against Mirro for a considerable time. The only mention of the action was asserted in a complaint filed in as of [sic] March 1987. The court has dismissed that for the reasons stated. Therefore, the court finds there was no frivolous claim against Mirro.

In its memorandum decision on the issue, the court again implied that it did not view the quiet title action against Mirro as a "claim."[4]

---

[4]The memorandum decision states, in relevant part:

[T]he original complaint did not assert a claim under the warranty contained in Mirro's deed. Indeed, there was no claim made under the warranty until the eleventh hour amendment
. . . .
The purpose of 814.025 is perfectly obvious. It is to discourage the filing of frivolous claims thus reducing the burden on the system of justice and the costs to litigants who find themselves ensnared in this type of litigation. At the heart, however, of this statute is the requirement that there be in fact a frivolous claim made. If the court were to grant Mirro's motion the court would, in effect, allow Mirro to assert a large legal bill defending a claim that wasn't made. To a certain extent the purpose of the statute, at least in relieving the Courts of having to deal with frivolous litigation would be subverted if the Court were to allow Mirro to proceed on this claim.
The Court is aware of Mirro's allegations that the litigation was in fact cooked up by Freis and B & B in an attempt to exact some money from Mirro. That may or may not be. However, if

Interpretation of a statute is a question of law, which we review without deference to the trial court. *Stoll v. Adriansen,* 122 Wis. 2d 503, 510, 362 N.W.2d 182, 186 (Ct. App. 1984).

Section 814.025, Stats., provides a remedy for those forced to litigate a frivolous action or special proceeding. Quiet title litigation is an action and therefore is within the statute's ambit if defendant is named in the complaint. Simply because the original action is one to quiet title—rather than one demanding money, for example—does not take it outside the scope of sec. 814.025.

In essence, the trial court decided that Mirro's claim of "bad faith"—which, if found, would constitute frivolousness—was irrelevant. The court may have believed that being named as a defendant in the quiet title action did not put Mirro in an adversarial position vis-a-vis B & B. Or the court may have concluded that since Mirro did not face any monetary loss should B & B succeed in quieting title, the action was outside the scope of sec. 814.025, Stats. However, because B & B filed an action naming Mirro as a defendant, Mirro was required to defend itself, and the action was within the scope of the frivolous claims statute. The trial court was therefore required to pass on the merits of Mirro's claim of frivolousness once the issue was properly raised.

that is the case it would seem to me to be the subject of a claim that goes beyond the type of problem addressed by the frivolous claims statute. Since the court is not passing on the merits of those potential claims, Mirro presumably will be free to assert that claim in separate litigation if it should choose to do so.

*Sommer* directs that the trial court initially determine whether there is enough in the record for it to make findings leading to a conclusion of frivolousness or its absence. *Sommer,* 99 Wis. 2d at 793, 299 N.W.2d at 858. If the record is insufficient for that purpose, a hearing must be held. *Id.*

Should the court determine that bad faith was not present when B & B filed its quiet title action, that concludes the matter. If, however, the court does find bad faith present, it must then determine what costs and attorney's fees Mirro reasonably incurred as a result. *Stivarius v. DiVall,* 121 Wis. 2d 145, 158, 358 N.W.2d 530, 537 (1984).

*By the Court.*—Order affirmed in part, reversed in part, and cause remanded for action consistent with this opinion.