COURT OF APPEALS
DECISION
DATED AND FILED

July 18, 2023

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2021AP1398**

STATE OF WISCONSIN

Cir. Ct. No. 2016CV317

IN COURT OF APPEALS
DISTRICT III

COLEMAN & HARTMAN, S.C., LARRY COLEMAN AND SUE HARTMAN,

  PLAINTIFFS-RESPONDENTS-CROSS-APPELLANTS,

  V.

IAMG, LLC,

  DEFENDANT-APPELLANT-CROSS-RESPONDENT,

SETH PARKER, AMANDA OESTREICH AND MELISSA BARTHMAN,

  DEFENDANTS,

CARLSONSV, LLP,

  CROSS-CLAIM DEFENDANT-RESPONDENT.

APPEAL and CROSS-APPEAL from orders of the circuit court for Polk County: J. MICHAEL BITNEY, Judge. *Affirmed in part; reversed in part and cause remanded with directions.*

Before Stark, P.J., Hruz and Gill, JJ.

¶1      GILL, J.   Prior to 2014, Coleman & Hartman, S.C., Larry Coleman, and Sue Hartman (collectively, C&H) owned and operated an accounting firm.  In 2014, C&H entered into two agreements to sell the accounting business to iAMg, LLC, Seth Parker, Amanda Oestreich, and Melissa Barthman (collectively, iAMg).[1]   C&H ultimately sued iAMg, asserting a number of causes of action arising out of that sale.  iAMg, in turn, counterclaimed asserting various causes of action arising out of C&H's claimed breach of the sale agreements.

¶2      iAMg now appeals and C&H cross-appeals.  Both parties claim that the circuit court erroneously exercised its discretion by dismissing with prejudice all of their respective claims based upon discovery violations.  The parties also argue that the court erred in denying their respective motions for reconsideration, and CarlsonSV—where Hartman works as a CPA and which was impleaded by iAMg—asserts that the court properly exercised its discretion in dismissing iAMg's counterclaims because dismissal of only C&H's claims would unfairly prejudice CarlsonSV.[2]

¶3      We conclude that the circuit court did not erroneously exercise its discretion in sanctioning C&H for discovery violations, pursuant to WIS. STAT.

---

[1]  iAMg's name in the record before us is at times inconsistent.  For example, documents refer to it as iAM G and iAMG.  For the sake of this opinion, we use the name given in iAMg's notice of appeal.

[2] There is some confusion as to whether CarlsonSV is properly identified as a cross-claim defendant, as opposed to a counterclaim defendant or a third-party defendant.  Resolution of this issue is not relevant to our analysis.  Accordingly, and following the parties' lead in their pleadings, we will identify iAMg's claim against CarlsonSV as a "counterclaim."

§ 804.12(2) (2021-22),[3] by dismissing its claims with prejudice after finding that C&H's violations were "egregious," without excuse, and "extreme, substantial, and persistent." Nor did the court erroneously deny C&H's motion for reconsideration. However, we further conclude that the court did erroneously exercise its discretion in sanctioning iAMg for discovery violations by dismissing its counterclaims with prejudice because the court did not make a finding that iAMg violated any discovery order, or that it did so egregiously or in bad faith and without excuse. Section 804.12(2) only permits a court to sanction an offending party for discovery violations. Furthermore, the court erroneously found that CarlsonSV would be prejudiced if iAMg's counterclaims were not dismissed.

¶4 We therefore affirm the circuit court's decision dismissing C&H's claims with prejudice. We reverse the court's decision dismissing iAMg's counterclaims with prejudice, and we remand for the court to reinstate those claims.

## BACKGROUND

¶5 In October 2016, C&H, a services corporation engaged in accounting and tax preparation and planning, filed the present lawsuit against iAMg, an investment and wealth management firm. C&H's complaint alleged seven claims, including breach of contract, defamation, and intentional infliction of emotional distress.

---

[3] All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

¶6    According to the complaint, in late 2014 and early 2015, C&H entered into two agreements with iAMg. The first agreement was an Asset Purchase Agreement (APA), providing for iAMg's purchase of "various assets of [C&H's] business" from C&H. The APA included non-compete and non-solicitation provisions which prohibited C&H from "directly or indirectly" inducing or attempting to induce "any client … to cease doing business with [iAMg] … or in any way interfere with the relationship between any such customer."

¶7    The second agreement, a Management Services Agreement (MSA), involved the two parties combining their business services "subject to [C&H] retaining control over [its] daily management operation." As part of the agreements, Coleman would serve as an employee of iAMg. C&H alleged that in August 2016, iAMg terminated Coleman's employment, terminated the MSA, and declared the MSA to be no longer in effect.

¶8    iAMg filed an answer and counterclaimed against C&H alleging that C&H breached the APA's restrictive covenants. iAMg also sought a declaration of the restrictive covenants' validity. Later, the circuit court granted iAMg's motions to implead CarlsonSV and to file an amended answer and counterclaims alleging, among other things, that CarlsonSV tortiously interfered with the APA by hiring Hartman.[4]

---

[4] The circuit court later granted CarlsonSV's motion for summary judgment as to iAMg's other counterclaim against CarlsonSV (tortious interference with a prospective contract). That counterclaim is not at issue in iAMg's appeal.

¶9      The lawsuit continued for nearly five years.  In that time, iAMg and C&H filed numerous motions to compel against each other.  iAMg continuously alleged that C&H was withholding discoverable information and, at one point, alleged that Coleman, specifically, accessed iAMg's servers and then destroyed the evidence of his access to the servers (i.e., iAMg accused C&H of spoliation).

¶10      As relevant to this appeal, the circuit court ordered C&H to provide specific discovery to iAMg on two occasions: February 2018 and November 2019.  In the February 2018 discovery order, the court required C&H to provide iAMg with discovery "regarding when, why and how clients of [iAMg] came to do business with Mr. Coleman or Ms. Hartman or her firm after August 26, 2016."  The November 2019 discovery order against C&H stated that C&H failed to comply with the court's February 2018 order, and it directed C&H to provide iAMg with specific information, including documents related to C&H's alleged business with iAMg clients.  The court issued only one discovery order directed specifically to iAMg.[5]  That order, issued in November 2019, required iAMg to respond to C&H's interrogatory requests and C&H's documents requests.

¶11      Throughout the litigation, the circuit court repeatedly warned the parties that discovery sanctions were a possibility.  For example, in its November 2019 discovery orders, the court warned C&H and iAMg that "[f]ailure to comply shall result in sanctions being imposed."  The court also gave oral warnings to the

---

[5] The circuit court had previously signed a similar discovery order that was prepared by C&H.  The court later vacated that order because it did not accurately reflect the court's oral rulings.  The court also signed numerous scheduling orders, some of which included discovery compliance deadlines.

parties. At a November 2019 hearing regarding pending motions to compel from both C&H and iAMg, the court admonished counsel for both parties, stating:

> And instead of finalizing jury trial preparations this afternoon for the half hour that I allotted for this hearing, the [c]ourt is now bombarded with discovery motions, alleged discovery violations and a motion to amend the final scheduling order again, including resetting the trial, which will necessitate, at the very least, a six-month delay in this litigation. To say that the [c]ourt is disappointed and concerned would be an understatement, gentlemen.
>
> ….
>
> I expect the [c]ourt's orders to be followed. If they're not, there will be the appropriate sanctions levied against the offender or the offenders. It is obvious to this [c]ourt that the parties are nowhere near ready to try this case …. The new dates that the [c]ourt will set are expected to be complied with to the letter and without fail.
>
> ….
>
> I can advise counsel for the record that in looking at what I have seen thus far, there have been discovery violations on both sides of the ledger. What troubles the [c]ourt is that not only have the parties failed to comply with the discovery demands that were issued, but they then failed to approach the [c]ourt for the appropriate relief, be it by way of protective orders or otherwise, until way late in the game to where we could no longer salvage this trial date. That's not going to happen again, gentlemen, because if it does, there will be the appropriate sanctions levied by the [c]ourt and we will try this case and bring this matter to conclusion for the parties on the next jury trial date that's available to the [c]ourt and counsel's calendar.
>
> ….
>
> The parties are expected to comply fully with any and all outstanding interrogatories, production of documents or other discovery demands that have been made thus far. I have read them, I believe that they are reasonable, I believe that they were likely to lead to evidence at trial. Whether and how much of that will ultimately be admissible obviously will be determined at a later date. But the requests that are outstanding must be complied with in full

under penalty of contempt and the appropriate sanctions by January 31st of 2020. Do you understand that, counsel?

….

This is the last kick at the cat you're going to get to wrap this up to make sure that you're fully prepared ….

¶12 In February 2021, iAMg filed a motion for discovery sanctions against C&H, stating that C&H had recently produced emails between C&H and iAMg clients—which, according to iAMg, proved that C&H violated the APA— "five years after they were requested," "more than three years after the [c]ourt ordered that they be produced," and "more than fifteen months after the [c]ourt again ordered these documents to be produced." (Emphasis omitted.) iAMg filed a proposed order that requested, among other things: (1) $50,000 for reasonable costs and fees; (2) a finding that C&H intentionally breached the APA and that C&H was "dishonest in their representations to iAMg regarding the existence, nature and scope of their breaches"; and (3) an order stating that C&H was prohibited from arguing or introducing evidence regarding their breach of the APA.

¶13 C&H responded to iAMg's motion for discovery sanctions by arguing that C&H had "made a good faith effort to provide discovery" and that C&H "produced information [on January 31, 2020,] … that included lists of people that [C&H] had worked with after the [MSA] was wrongfully terminated." C&H also requested that iAMg be sanctioned for attorney's fees and expenses due to iAMg's own failure to respond to discovery requests.

¶14 CarlsonSV also opposed iAMg's motion for discovery sanctions against C&H. Specifically, CarlsonSV argued that if iAMg's discovery sanctions motion and the relief sought were granted, iAMg's counterclaim against it—that

CarlsonSV tortiously interfered with the APA—would not be defendable at trial. CarlsonSV stated that "[a] significant portion of [its] defense at trial w[ould] be presenting evidence and argument that [Hartman] did not breach the [APA] through her employment with CarlsonSV." According to CarlsonSV, iAMg's proposed court-ordered finding that C&H intentionally violated the APA would directly conflict with CarlsonSV's theory of defense. To the extent the circuit court granted iAMg's motion for discovery sanctions and granted its relief sought, CarlsonSV argued that the court should "make arrangements to remove the prejudicial effect … by allowing the [counter]claim against CarlsonSV to be tried separately."

¶15 iAMg responded to CarlsonSV's objection, conceding that CarlsonSV did not engage in discovery violations. However, iAMg asserted that CarlsonSV "was repeatedly made aware that [Hartman] was the subject of restrictive covenants when they hired her … [and] CarlsonSV was a beneficiary of her misconduct." Therefore, iAMg argued, the issue could be "remedied with jury instructions at the time of trial[] so that CarlsonSV [would] not [be] unfairly punished for [Hartman's] discovery failures."

¶16 Following iAMg's discovery sanctions motion, the circuit court held a scheduling conference on February 19, 2021. The court informed the parties:

> Having read all the pleadings filed since we were last together in October, it's obvious that I'm going to have to make significant decisions regarding the issues of discovery despite my hope that counsel would be able to work together and in concert with their experts to resolve these. That, unfortunately, hasn't been done ….
>
>  ….
>
> I think counsel both know that when I make the decision on what is going to be ultimately discoverable and the mechanism for which that's gonna be done by, if that's not

complied with by a date certain in advance of trial, standard sanctions would be the exclusion of evidence or the exclusion of witnesses as may be appropriate, and that goes both ways ….

¶17    The circuit court then scheduled a motion hearing for March 29, 2021, to address iAMg's discovery sanctions motion as well as C&H's motion to compel iAMg to produce specific discovery and allow C&H to forensic image certain devices.  On March 26, iAMg filed a letter with the court requesting an adjournment due to an iAMg attorney's "serious health concern."  According to iAMg, C&H did not object to the adjournment.

¶18    As the circuit court had warned, it imposed discovery sanctions on both C&H and iAMg, and it denied iAMg's adjournment request.  In a written decision and order, the court dismissed with prejudice C&H's claims and iAMg's counterclaims.  In rendering its decision, the court focused on C&H's discovery violations—specifically violations of the court's February 2018 and November 2019 discovery orders.  The court did not find in its decision that iAMg had violated the court's November 2019 discovery order against it or any other order.  Despite this omission, the court dismissed iAMg's counterclaims because, according to the court, dismissing only C&H's claims would unfairly prejudice CarlsonSV.

¶19    Following motions for clarification and reconsideration from iAMg and C&H, the circuit court affirmed its discovery sanctions decision and order.  Of note, the court denied iAMg's motion because the court "granted the relief requested by" iAMg and because all of the claims from both parties "are so inextricably intertwined … that to partially reopen th[e] litigation" would create "an inability to fairly and fully prosecute or defend" the counterclaims.  The court reaffirmed its reasoning that CarlsonSV would be unfairly prejudiced if iAMg's

9

counterclaims continued. Again, the court did not make a finding that iAMg violated the November 2019 discovery order against it or any other order.

¶20 iAMg appeals, and C&H cross-appeals. Additional facts will be presented below where necessary.

## DISCUSSION

¶21 C&H and iAMg both argue that the circuit court erroneously exercised its discretion by sanctioning them with dismissal of their respective claims with prejudice. As relevant to this appeal and cross-appeal, a party "may apply for an order compelling discovery" "[i]f a deponent fails to answer a question propounded or submitted"; "a party fails to answer an interrogatory submitted"; or "if a party, in response to a request for inspection … fails to produce documents or fails to respond that inspection will be permitted as requested or fails to permit inspection as requested." *See* WIS. STAT. § 804.12(1)(a). An order compelling discovery may require "an answer, or a designation, or" an inspection. ***Id.***

¶22 Upon a party's failure "to obey an order to provide or permit discovery," a circuit court "in which the action is pending may make such orders in regard to the failure as are just," including "dismissing the action or proceeding or any part thereof, or rendering a judgment by default *against the disobedient party*." WIS. STAT. § 804.12(2)(a)3. (emphasis added); *see also* WIS. STAT. § 805.03 ("[F]or failure of any party … to obey any order of court, the court in which the action is pending may make such orders in regard to the failure as are just, including but not limited to orders authorized under [§] 804.12(2)(a)."). Prior to issuing sanctions, due process "requires at least a fair and adequate warning by court rule or notice of the imposition of the sanctions or penalties to be invoked

for the failure to comply with a court order." ***Latham v. Casey & King Corp.***, 23 Wis. 2d 311, 316, 127 N.W.2d 225 (1964).

¶23 Before dismissing a party's claims based upon a party's failure to obey a circuit court order to provide or permit discovery pursuant to WIS. STAT. § 804.12(2)(a)3., a circuit court must "make a finding of 'egregious conduct' or 'bad faith' without a 'clear and justifiable excuse.'" ***Mohns Inc. v. BMO Harris Bank Nat'l Ass'n***, 2021 WI 8, ¶36, 395 Wis. 2d 421, 954 N.W.2d 339 (citations omitted). "Where the … court finds that failures to respond to discovery and follow court orders are 'extreme, substantial, and persistent' it may dismiss the action with prejudice on the grounds that the conduct is egregious." ***Industrial Roofing Servs., Inc. v. Marquardt***, 2007 WI 19, ¶43, 299 Wis. 2d 81, 726 N.W.2d 898 (citation omitted).

¶24 "A discovery sanction represents a discretionary determination of [a] circuit court and is examined under the erroneous exercise of discretion standard of review."[6] ***Mohns***, 395 Wis. 2d 421, ¶33. A circuit court's discretionary power

---

[6] iAMg argues for a de novo review of the circuit court's discovery sanction against iAMg because it is "only challenging the legal conclusion that [its] [counter]claims were properly dismissed." We disagree that iAMg's framing of its argument on appeal alters the standard of review we apply to a court's discovery sanctions decision. Regardless of whether the party challenging a discovery sanction takes issue with a court's factual findings or legal conclusions, the court still must "examine[] the relevant facts, appl[y] a proper standard of law [and] us[e] a demonstrated rational process [to] reach[] a conclusion that a reasonable judge could reach." *See* ***Mohns Inc. v. BMO Harris Bank Nat'l Ass'n***, 2021 WI 8, ¶33, 395 Wis. 2d 421, 954 N.W.2d 339. Therefore, we apply the erroneous exercise of discretion standard to the court's decisions to issue discovery sanctions, including the dismissal of claims.

iAMg and CarlsonSV both discuss the circuit court "abus[ing]" its discretion in issuing the discovery sanctions. Our supreme court, however, long ago abandoned the practice of using the language "abuse of discretion" in place of "erroneous exercise of discretion" because the former "carries unjustified negative connotations." ***City of Brookfield v. Milwaukee Metro. Sewerage Dist.***, 171 Wis. 2d 400, 423, 491 N.W.2d 484 (1992). While the two phrases refer to the same standard of review, ***id.***, we urge counsel to use the correct terminology going forward.

to issue discovery sanctions "is absolutely essential to the court's ability to efficiently and effectively administer its calendar." *Sentry Ins. v. Davis*, 2001 WI App 203, ¶19, 247 Wis. 2d 501, 634 N.W.2d 553. We will uphold a court's discretionary decision if the court "examined the relevant facts, applied a proper standard of law, and, using a demonstrated rational process, reached a conclusion that a reasonable judge could reach." *Mohns*, 395 Wis. 2d 421, ¶33 (citation omitted). "We affirm a circuit court's factual findings unless they are clearly erroneous." *Id.* (citing WIS. STAT. § 805.17(2)). "Additionally, this case involves questions of statutory interpretation and application," which present questions of law that we review de novo. *Townsend v. ChartSwap, LLC*, 2021 WI 86, ¶11, 399 Wis. 2d 599, 967 N.W.2d 21.

## I. Discovery violation sanction against C&H

¶25 The circuit court did not erroneously exercise its discretion when it dismissed C&H's claims with prejudice pursuant to WIS. STAT. § 804.12(2)(a)3. as a sanction for C&H's failure to comply with the court's discovery orders, which failure the court described as "extreme, substantial, and persistent." Specifically, the court found that iAMg served "multiple discovery demands," including interrogatories, requests for the production of documents, and depositions, on C&H beginning in December 2016. These demands sought "all communications relating to when, why and how clients of [iAMg] came to do business with Mr. Coleman or Ms. Hartman or her firm [CarlsonSV], despite their agreed-upon restrictive covenants."

¶26 The circuit court further found that:

> Despite the plaintiffs' and their attorney's claim that no such communication existed, [iAMg] discovered from documents subpoenaed from former clients that both of the plaintiffs had used a variety of email accounts to

12

communicate with and provide tax and accounting services to [iAMg's] clients beginning in the fall of 2016 through early 2017. The plaintiffs, however, produced none of these emails themselves, and even denied their existence, despite these disclosures and [iAMg's] repeated demands therefor and [c]ourt [o]rders compelling the production thereof.

….

It was not until late February[] 2021 that the plaintiffs finally produced at least some of the emails that [iAMg] ha[d] sought over the last five years and which this [c]ourt ordered be produced by two separate [o]rders.

Furthermore, many of the emails that the plaintiffs finally turned over to [iAMg] appeared to have been altered to delete information regarding the date and time that the emails were originally sent and to what email addresses they were sent to, leading this [c]ourt to suspect a possible effort to cover up the plaintiffs' violations of the restrictive covenants, which again are material to [iAMg's] defense and counterclaims.

The court then discussed both its February 2018 and November 2019 orders, with which the court found that C&H had refused to comply. The court's first discovery order required C&H to provide discovery relating to "when, why and how clients of [iAMg] came to do business with Mr. Coleman or Ms. Hartman or her firm [CarlsonSV] after August 23, 2016." The court's second discovery order required C&H to "provide responses to" specific iAMg requests for the production of documents and an interrogatory concerning "when, why and how clients of [iAMg] came to do business with Mr. Coleman or Ms. Hartman or her firm [CarlsonSV] after August 23, 2016."

¶27 After outlining the factual basis for its decision, the circuit court found that C&H "repeated[ly] and persistent[ly] refus[ed] to comply with" both iAMg's discovery demands and the court's discovery orders. The court characterized C&H's refusals as "egregious in every sense of the word … leaving

13

the [c]ourt with no option[] but to dismiss this action under" WIS. STAT. §§ 804.12(2)(a)3. and 805.03.

¶28     The circuit court's findings that C&H "repeated[ly] and persistent[ly] refus[ed] to comply with" both iAMg's discovery demands and the court's discovery orders, and that the refusals were "extreme, substantial, and persistent" and "egregious," are not clearly erroneous and support the court's discovery sanction against C&H.  It is undisputed that the court required C&H to comply with iAMg's discovery requests regarding communication between C&H and iAMg clients.  After the court's November 2019 order, C&H did provide iAMg with some documents.  However, iAMg then sent C&H responses it had received, pursuant to multiple subpoenas to former clients, showing that both Coleman and Hartman used a variety of email accounts to communicate and provide tax and accounting services to iAMg clients in the fall of 2016 and early 2017.  Almost none of these emails were provided through discovery by C&H up to that point.  Almost immediately thereafter, C&H produced the documents requested by iAMg and required by the court's earlier orders.  In total, C&H delayed in responding to the court's February 2018 order by over 1,100 days, and it delayed in responding to the court's November 2019 order by over 450 days.

¶29     Despite the record before the circuit court, C&H contends that an evidentiary hearing was required prior to the dismissal of its claims because, according to C&H, "all the facts relied upon by the circuit court [in its decision and order] were disputed."  Citing the affidavits of its forensic expert, who was hired to address "technical issues … related to the discovery of electronically stored information (ESI)," C&H argues that there were "technical issues underlying the parties' discovery dispute" and that it denies failing to produce emails that were available to it.

14

¶30     Regardless of whether there were technical discovery issues, C&H's reliance on its forensic expert's affidavits and discovery issues to argue that an evidentiary hearing was required prior to the circuit court's issuance of its dismissal order is misplaced.  A circuit court is required to hold an evidentiary hearing on a discovery sanctions motion "if the [court] relies upon disputed facts or inferences from those facts in its decision" and if the motion is for dismissal with prejudice.  *Industrial Roofing*, 299 Wis. 2d 81, ¶66 n.13.  However, an evidentiary hearing is not required if the court relies on undisputed facts that are reasonably supported by the record.  *Id.*

¶31     First, the forensic expert did not opine that the purported "technical issues" caused C&H to not comply with the circuit court's discovery orders; specifically, the expert did not explain how C&H was able to produce the emails in February 2021, but not previously.  Second, the court did not find that technical issues had any impact on C&H's ability to produce the ordered discovery, and the court did not consider any factual disputes surrounding technical issues when sanctioning C&H.  This reasoning is supported by the record given that there was no evidence before the court to the contrary.  Furthermore, C&H's motion to compel at the February 2021 hearing dealt with "forensic imaging" of certain iAMg devices, and did not deal with C&H's ability to produce documents related to communications with iAMg's clients.[7]  Therefore, the court's findings that C&H "repeated[ly] and persistent[ly] refus[ed] to comply with" both iAMg's discovery demands and the court's discovery orders, and that the refusals were

---

[7] At the February 19, 2021 hearing, C&H admitted as much when it argued to the circuit court that its "motion to compel has to do with the production of devices that our experts are prepared to look at and conduct a forensic imaging of those devices.  [iAMg's] motion for sanctions is not really interrelated to that."

"extreme, substantial, and persistent," are not clearly erroneous and support the court's discovery sanction against C&H.

¶32    C&H also argues that the circuit court made erroneous factual findings in its written decision and order demonstrating "a fundamental misunderstanding concerning the nature of the discovery demands" and "the nature of the parties' claims." For example, C&H points to the court's misstatement that the MSA was terminated because C&H violated the restrictive covenants. However, C&H fails to explain how the court's misstatement of these particular background facts affected the court's ultimate decision regarding discovery violations. We conclude that these findings, although erroneous, were not material to the court's decision and therefore provide no grounds for reversal.

¶33    Next, C&H argues that the circuit court failed to "give warning to either party that its claims were subject to dismissal." Instead, C&H cites the court's statements at the February 2021 hearing, at which it stated that "standard sanctions would be the exclusion of evidence or the exclusion of witnesses as may be appropriate." Furthermore, C&H argues that because the court scheduled a hearing for March 29, 2021, to address the sanctions motion, the court was barred from issuing a decision prior to holding that hearing. In support of this latter argument, C&H cites the court's statement that C&H should have "a full opportunity to respond" prior to the court's sanctions decision.

¶34    C&H's arguments fail for several reasons. First, C&H mischaracterizes the circuit court's statement regarding it giving C&H an opportunity to respond to iAMg's motion for sanctions. The court stated that it was giving C&H an opportunity to "support … their position that they are entitled to the discovery that they are demanding" iAMg to produce. In other words, the

court was offering C&H an opportunity to reply to iAMg's response to C&H's motion to compel discovery related to forensic imaging. Regarding iAMg's motion for sanctions, the court asked C&H "how long is a fair and reasonable opportunity for you to respond to" iAMg's motion, indicating that it wanted C&H to file a written response. And, following the February 19, 2021 hearing, C&H indeed filed a response to iAMg's motion for sanctions. The court, therefore, was fully apprised of C&H's position as to iAMg's motion for sanctions prior to issuing its order. Even assuming dismissal of C&H's claims with prejudice was not "the self-evident remedy for an overt violation of a court order or rule," the court gave C&H an opportunity to respond to iAMg's sanctions motion. *See* ***B & B Invs. v. Mirro Corp.***, 147 Wis. 2d 675, 683-84, 434 N.W.2d 104 (Ct. App. 1988).

¶35  Second, as noted above, the circuit court warned the parties on a number of occasions that if a party violated its discovery orders, it could impose serious sanctions. At the November 2019 hearing, the court warned of sanctions on three occasions. Initially, the court stated that it expected its "orders to be followed. If they're not, there will be the appropriate sanctions levied against the offender or the offenders." Later, the court again warned that "the [discovery] requests that are outstanding must be complied with in full under penalty of contempt and the appropriate sanctions." And again, at the end of the hearing, the court informed the parties that if the parties "aren't willing to comply, be fair and be fully disclosing what's being ordered, there will be the appropriate sanctions by way of either admissions or exclusions of evidence or testimony, as well as any other necessary sanctions that the [c]ourt finds reasonable and appropriate. Counsel, do you understand?" Similarly, the court's November 2019 order identified that C&H failed to comply with its previous February 2018 discovery

17

order and required C&H to provide iAMg with specific discovery. The order further stated that "[f]ailure to comply shall result in sanctions being imposed."[8] These warnings were more than adequate to give "a fair and adequate warning by … notice of the imposition of the sanctions or penalties to be invoked for the failure to comply with" the court's discovery order. *See **Latham***, 23 Wis. 2d at 316.

¶36     Additionally, WIS. STAT. § 804.12(2)(a)3. expressly provides circuit courts the authority to dismiss an action for a party's failure to comply with a discovery order. Therefore, the court's warnings to C&H that "appropriate sanctions" could be imposed for a party's failure to follow the court's discovery orders—in addition to the circumstances of this particular case, including the numerous warnings and length of litigation—clearly put C&H on notice that dismissal with prejudice was a possibility. *See **Latham***, 23 Wis. 2d at 316 (holding that the absence of a court rule allowing sanctions meant an attorney was not on notice of sanctions for failure to "obey an order to appear at a pretrial conference").

¶37     C&H relies on ***Industrial Roofing*** to argue that statutory notice is insufficient to give notice of sanctions. In ***Industrial Roofing***, our supreme court stated that "before a client is subjected to dismissal with prejudice, the client should have notice that [a circuit] court is considering such a harsh sanction."

---

[8] At a September 21, 2020 hearing, the circuit court warned the parties that "one of the … requests on the table … is the ultimate dynamite sanction, which is a dismissal of this case." The court's statement was in response to iAMg's motion for dismissal relating to the spoliation issue. While the court's warning at this particular hearing was not expressly in relation to alleged discovery violations, it further supports the fact that the court warned the parties that they could be sanctioned for their improper actions, including sanction with dismissal of claims.

*Industrial Roofing*, 299 Wis. 2d 81, ¶71. This holding was made in the context of an argument made on appeal by a sanctioned party. Specifically, the sanctioned party argued "that it was an erroneous exercise of discretion for the circuit court to impute the conduct of the attorney to the client where the client is blameless." *Id.*, ¶57.

¶38 Ultimately, our supreme court determined "that it is an erroneous exercise of discretion for a circuit court to enter a sanction of dismissal with prejudice, imputing the attorney's conduct to the client, where the client is blameless." *Id.*, ¶61. In this context, the court held that the attorney's conduct in that case could be imputed upon the client because the client "knew that the court was considering the dismissal with prejudice sanction and was given an opportunity by the court to avoid those consequences." *Id.*, ¶71.

¶39 Here, C&H does not argue that Coleman and Hartman were blameless or that they, specifically, did not receive proper notice. Even so, the circuit court found that the attorneys, as well Coleman and Hartman, were also to blame. For example, the circuit court found in its order dismissing C&H's claims with prejudice, that "[d]espite the plaintiffs' and their attorney's claim that no such communication" between Coleman and Hartman and iAMg clients "existed, [iAMg] discovered from documents subpoenaed from former clients that both of the plaintiffs had used a variety of email accounts to communicate with and provide tax and accounting services" to iAMg's clients. Yet, Coleman and Hartman "denied" that the emails existed "despite these disclosures and the defendant's repeated demands therefor and [c]ourt [o]rders compelling the production thereof." This finding is not clearly erroneous. Therefore, we do not find persuasive C&H's reliance on *Industrial Roofing*'s notice standard. In any event, we conclude that C&H did receive notice of the impending sanction.

¶40     We therefore conclude that the circuit court's discovery sanction decision against C&H was not without warning.  Additionally, the fact that the court did not wait to issue its discovery sanction decision until after *another* motion hearing—when the case had already languished for nearly five years, after the court expressed its irritation with the parties' discovery tactics, and after the court gave C&H an opportunity to respond to iAMg's motion for sanctions—does not constitute an erroneous exercise of the court's discretion.

## II.  Discovery violation sanction against iAMg

¶41     We conclude that the circuit court erroneously exercised its discretion when it dismissed iAMg's counterclaims because WIS. STAT. § 804.12(2), by its plain language, allows a circuit court to impose sanctions only on a party that it finds violated a discovery order.[9]  *See **Rao v. WMA Sec., Inc.**,* 2008 WI 73, ¶36, 310 Wis. 2d 623, 752 N.W.2d 220.

¶42     WISCONSIN STAT. § 804.12(2)(a) begins by stating that sanctions are permissible "[i]f a party … fails to obey an order."  *Id.*  Section 804.12(2)(a) limits a court's discovery sanctions "in regard *to the failure*."  *Id.* (emphasis added).  Dismissal of the action is one such sanction listed under § 804.12(2)(a), but the

---

[9] In its written decision and order regarding discovery sanctions, the circuit court cited three cases to support dismissal of iAMg's counterclaims:  (1) *Industrial Roofing Services., Inc. v. Marquardt*, 2007 WI 19, 299 Wis. 2d 81, 726 N.W.2d 898; (2) *Lister v. Sure-Dry Basement Systems, Inc.*, 2008 WI App 124, 313 Wis. 2d 151, 758 N.W.2d 126; and (3) *Garfoot v. Fireman's Fund Insurance Co.*, 228 Wis. 2d 707, 599 N.W.2d 411 (Ct. App. 1999).  Although it is not clear from the decision whether the court was relying on these three cases to support dismissal against iAMg—as opposed to dismissal against C&H only—we conclude that the cases do not support dismissal against a non-violating party under WIS. STAT. § 804.12(2)(a).  *See Industrial Roofing*, 299 Wis. 2d 81, ¶¶20-38 (disobedient party appealing); *Lister*, 313 Wis. 2d 151, ¶8 (same); *Garfoot*, 228 Wis. 2d at 711 (same).

sanction is limited to "the disobedient party." Sec. 804.12(2)(a)3. The statute is devoid of any language allowing a court to sanction a non-violating party.

¶43     This interpretation of WIS. STAT. § 804.12(2) produces the most logical outcome, particularly where a non-violating party has claims pending. The statute allows the non-violating party harmed by the discovery abuses to continue its claims instead of further harming that party by also dismissing its claims. Conversely, dismissing the non-violating party's claims would benefit the "disobedient" party by dismissing claims against it.

¶44     The circuit court's decision and order did not make any finding regarding iAMg's purported discovery violations. The court issued only one discovery order to iAMg—the November 2019 order. That order required iAMg to respond to interrogatories and produce documents, but the court never found that iAMg violated the order.[10]

¶45     C&H concedes that "the circuit court did not make any specific findings of egregiousness against iAMg" in its written decision and order. Despite this concession, C&H urges this court to "imply such a finding given the record in this case." In making this argument, C&H cites the court's statements throughout the nearly five-year litigation, in which the court placed blame on both C&H and iAMg for discovery issues.

¶46     Be that as it may, the circuit court did not make a single finding that iAMg violated a discovery order. As outlined above, a circuit court is authorized

---

[10] Nor did the circuit court find that iAMg failed to comply with any of the court's scheduling orders that included discovery compliance deadlines.

to issue the discovery sanctions at issue here only "against the disobedient party." *See* WIS. STAT. § 804.12(2)(a)3. The court cannot be said to have made an implicit finding of egregiousness warranting the dismissal of iAMg's counterclaims when there was no underlying finding of a discovery order violation. Even then, the court never made a finding that iAMg violated such an order through "'egregious conduct' or 'bad faith' without a 'clear and justifiable excuse.'" *See id.*; *Mohns*, 395 Wis. 2d 421, ¶36 (citations omitted). Furthermore, to dismiss iAMg's counterclaims with prejudice, the court was required to find, but failed to on the record before us, that iAMg ignored discovery requests and orders in an "extreme, substantial, and persistent" manner. *See **Industrial Roofing***, 299 Wis. 2d 81, ¶43 (citation omitted). The only comment the court made regarding iAMg's discovery violations came at the November 2019 hearing, where it stated that the court observed "discovery violations on both sides of the ledger." This statement—made prior to a discovery order specifically directed at iAMg—does not meet the standard required to dismiss a party's claims with prejudice under § 804.12(2)(a)3.

¶47 C&H cites a number of cases in support of its assertion that even if a circuit court does not make an express finding that a party acted egregiously, we can look for implicit findings in the record. We disagree that these cases support C&H's proposition as applied to this case. For example, in ***Teff v. Unity Health Plans Insurance Corp.***, 2003 WI App 115, ¶14, 265 Wis. 2d 703, 666 N.W.2d 38, the circuit court ordered a default judgment against the plaintiff for discovery violations. While the court did not specifically use the words "'egregious' or 'bad faith' to describe [the plaintiff's] conduct," we concluded that there was "an implicit finding" of such conduct. *Id.* Notably, the court found at a motion hearing that the plaintiff violated numerous discovery orders and did not "take the

lawsuit seriously and give it the attention it deserved." *Id.*, ¶¶9, 14; *see also Englewood Cmty. Apts. Ltd. P'ship v. Alexander Grant & Co.*, 119 Wis. 2d 34, 39 n.3, 349 N.W.2d 716 (Ct. App. 1984) (circuit court's failure to use precise "magic words" did not preclude this court from relying on the circuit court's factual findings regarding the disobedient party's discovery violations).

¶48 Again, here, unlike in *Teff*, the circuit court never found that iAMg violated a discovery order. We cannot search the record for implicit findings supporting a court's discovery sanction for egregious or bad faith conduct in violation of court orders if the court never found that iAMg violated the court's discovery orders to begin with. Further, unlike in *Teff*, here, the court never made a finding—implicitly or expressly—that iAMg engaged in egregious conduct.

¶49 Following iAMg's motion for clarification and reconsideration, the circuit court defended its dismissal of iAMg's counterclaims on two different grounds. We conclude that the court erroneously exercised its discretion in dismissing iAMg's counterclaims under both grounds.

¶50 First, the circuit court stated that it "granted the relief requested by [iAMg], that this matter be dismissed with prejudice because of [C&H's] egregious discovery abuses." However, as iAMg argues on appeal, its motion for discovery sanctions did not request dismissal of the entire case. Instead, as it related to the discovery sanctions, iAMg only requested: (1) $50,000 for reasonable costs and fees; (2) a finding that C&H intentionally breached the APA and that C&H was "dishonest in their representations to iAMg regarding the existence, nature and scope of their breaches"; (3) an order stating that C&H was prohibited from arguing or introducing evidence regarding their breach of the

APA; and (4) the requested discovery. We therefore conclude the court erroneously exercised its discretion in this sense.

¶51 Second, the circuit court justified dismissing the entire case because the parties—specifically, CarlsonSV—would be unfairly prejudiced if the entire case was not dismissed. In particular, the court found in its order denying iAMg's motion for reconsideration that all of the parties' claims were "so inextricably intertwined with [C&H's] alleged violations of the restrictive covenants … and the discovery abuses surrounding them … that to partially reopen this litigation would put the parties right back in the same quagmire that existed at the time of the" court's original sanctions decision and order, "namely, an inability to fairly and fully prosecute or defend all of the claims and counterclaims." (Formatting altered.)

¶52 Assuming without deciding that the circuit court's decision to analyze the potential prejudice to CarlsonSV when applying WIS. STAT. § 804.12(2) was not in error, we disagree with the court's finding that CarlsonSV would be unfairly prejudiced if iAMg's counterclaim against CarlsonSV were not dismissed. The court dismissed C&H's claims against iAMg for violating the court's discovery orders. Notably, the court did not grant iAMg's request to make a finding that C&H intentionally breached the APA, which would have some bearing on CarlsonSV's ability to defend itself against the tortious interference claim. *See Briesemeister v. Lehner*, 2006 WI App 140, ¶48, 295 Wis. 2d 429, 720 N.W.2d 531 (listing the elements for tortious interference with contract). Nor did the court order a default judgment in favor of iAMg's claims against C&H. *See* § 804.12(2)(a)3. (a circuit court is authorized to dismiss the action or proceeding, or render a default judgment against the disobedient party). In other words, there has been no ruling on the merits of any parties' claims in this case.

24

We therefore conclude that the court erroneously exercised its discretion by finding that CarlsonSV would be unfairly prejudiced by allowing iAMg's counterclaims to continue.

¶53     Lastly, CarlsonSV argues in the alternative that even if this court reverses and remands on iAMg's counterclaims, we should "order the [counter]claim against [CarlsonSV] be tried separately to insulate [it] from the prejudicial taint of the sanctions imposed against C&H."   Again, in granting iAMg's motion for discovery sanctions against C&H, the circuit court did not adopt iAMg's requested relief.   Instead, the court dismissed C&H's claims with prejudice.   CarlsonSV's request on appeal would require this court to issue an advisory opinion, which we refuse to do in this case.   *See **State v. Armstead***, 220 Wis. 2d 626, 631, 583 N.W.2d 444 (Ct. App. 1998) ("If the resolution of a claim depends on hypothetical or future facts, the claim is not ripe for adjudication and will not be addressed by this court.").   Regardless, the court on remand is in the best position to determine the manner and mode of the remaining litigation.

¶54     In all, the circuit court did not erroneously exercise its discretion in dismissing C&H's claims with prejudice under WIS. STAT. § 804.12(2).   Nor did the court erroneously deny C&H's motion for reconsideration.   The court did, however, erroneously sanction iAMg without finding that it had violated a discovery order or engaged in egregious conduct.   We therefore reverse the court's decision dismissing iAMg's counterclaims with prejudice and we remand for the court to reinstate those claims.   We affirm the court's order dismissing C&H's claims with prejudice.

¶55     No costs are awarded to any party.

*By the Court.*—Orders affirmed in part; reversed in part and cause remanded with directions.

Not recommended for publication in the official reports.